**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold E. SMITH, Defendant-Appellant.**

**No. 76–3327.**

United States Court of Appeals,
Ninth Circuit.

June 8, 1977.

Thomas M. Schneiger, Federal Defender Section, Metropolitan Public Defender, Portland, Or., argued, for defendant-appellant.

Marc D. Blackman, Asst. U. S. Atty., Portland, Or., argued for plaintiff-appellee.

Before MERRILL and SNEED, Circuit Judges, and BLUMENFELD,* District Judge.

SNEED, Circuit Judge:

Appellant Harold E. Smith was found guilty of criminal contempt in violation of Fed.R.Crim.P. 42 and 18 U.S.C. § 401 and was sentenced to sixty days imprisonment. He raises four points on appeal: first, that in convicting him the trial court improperly applied a less exacting standard of intent; second, that the application of this less rigid standard deprived him of his First Amendment rights; third, that even under this standard his actions did not constitute criminal contempt; and fourth, that his punishment was excessive. For the reasons set out below we reverse the judgment of the trial court.

Appellant, James Walter Scott and Gregory Scott were spectators at the trial of William Gardiner for failure to file income tax returns and for wilfully supplying false and fraudulent information to his employer on a withholding exemption certificate. They shared Gardiner's view that the income tax laws are unconstitutional. Prior to the noon recess, the court admonished the jury not to discuss the case among themselves or with others. Appellant was present in court at this time and heard this admonition.

During the noon recess, the three crossed the lobby of the courthouse and, in due course, exited into the street; as they walked, they actively discussed the Gardiner trial. Appellant was aware of the presence in the lobby of jurors in the Gardiner case. At the exit, they joined a group of people which included a juror named Paul Gartner. At this point, appellant commented to his companions, in a voice sufficiently loud to be heard by those in the immediate vicinity, something to the effect that "I hope this jury doesn't go along with those communistic tax laws." Gartner heard this remark and the incident was brought to the attention of the court. A motion for a mistrial was denied.

---

* Hon. M. Joseph Blumenfeld, United States District Judge for the District of Connecticut, sitting by designation.

At appellant's trial for criminal contempt stemming from this remark, the court found, *inter alia*, that (1) appellant was in the courtroom at the time of the admonition to the jury and was aware of this admonition, (2) appellant made the statement knowingly and wilfully, (3) the statement was made in tone of voice and volume sufficient for others in the immediate area, including Juror Paul Gartner, to hear the statement, (4) the statement had the tendency to influence improperly the actions of Gartner as a member of the jury and therefore had the tendency to influence improperly the actions of the jury, (5) appellant was aware of the presence of jurors in the lobby, (6) appellant was aware that he was speaking loudly enough to be heard beyond the immediate vicinity of his two companions, and (7) appellant made the statement with wilful and wanton disregard of whether jurors might hear it. The court pointed out that it was unable to find that appellant made the statement knowingly and intentionally to Gartner or that he made the statement knowing that Gartner was actually close enough to hear it.

On the basis of these findings, the trial court concluded that appellant was guilty of criminal contempt. We disagree. The type of intent necessary to support prosecution under 18 U.S.C. § 401 has been the center of controversy in many cases. *See, e. g. In re Williams*, 509 F.2d 949 (2d Cir. 1975); *In re Joyce*, 506 F.2d 373 (5th Cir. 1975); *United States v. Seale*, 461 F.2d 345 (7th Cir. 1972); *Hawkins v. United States*, 190 F.2d 782 (4th Cir. 1951). Reconciliation of these cases is not possible. However, our review of them leads us to conclude that under the circumstances of this case it is necessary that the appellant made the statement knowingly and intentionally to Gartner.

We believe our holding is consistent with an early expression of this court on this subject appearing in *Kelly v. United States*, 250 F. 947 (9th Cir. 1918), *cert. denied*, 248 U.S. 585, 39 S.Ct. 182, 63 L.Ed. 433 (1919). We said:

In order that one may be held for contempt for communications with jurors, on the ground of the harmful tendency thereof, it is not necessary to prove that the communications had or the acts done were accompanied with a wrongful intent. It is sufficient if such acts and communications were knowingly and willfully done and had, and had the tendency to influence improperly the action of the jury.

*Id.* at 950.

We read this as requiring that the communication be "knowingly and willfully . . . had . . . ." A communication made with "wilful and wanton disregard of whether the jurors might hear it," in the trial court's view of the circumstances of this case, is distinguishable from one made knowingly and intentionally. We accept the trial court's view and conclude that the communication here made with "wilful and wanton disregard of whether the jurors might hear it" does not meet the requirements of *Kelly*.

We recognize that *Kelly*, as well as *Hawkins v. United States, supra,* and *Higgins v. United States*, 81 U.S.App.D.C. 372, 160 F.2d 223 (1946), *cert. denied*, 331 U.S. 840, 67 S.Ct. 1511, 91 L.Ed. 1851 (1947), were concerned with instances in which admittedly the defendant knowingly had conversations with a juror.[1] The issue in each, to employ the language of *Kelly* once more, was whether the conversations "had the tendency to influence improperly the actions of the jury." Such a tendency was found to exist in this case by the trial court. However, as we have indicated, we read *Kelly*, when applied to the facts of this case, also to require a communication be made knowingly and intentionally to the juror. A careless loud mouth expressing his opinion in the vicinity of a juror is unmannered but not, without more, a criminal.

Our holding is not intended to suggest that we reject, or have reservations about,

---

1. In *Kelly* attorneys for two defendants conversed with and bought drinks for two jurors during the course of the trial of their clients.

the definition of the requisite intent for criminal contempt set forth in *United States v. Seale, supra.* *Seale* did not involve communications with a juror but rather allegedly contemptuous conduct within the courtroom. The context within which an inquiry regarding the requisite intent for conviction of criminal contempt arises invariably shapes the manner in which the requisite intent is expressed. For this reason we believe it better to employ *Kelly* as our guiding authority. For the same reason we do not wish to be understood as departing from *In re Allis*, 531 F.2d 1391, 1392 (9th Cir.), *cert. denied*, 429 U.S. 900, 97 S.Ct. 267, 50 L.Ed.2d 185 (1976), a case involving tardiness of an attorney in appearances in court. In each context the issue is whether the alleged contemnor has placed himself within the reach of the court's power to punish for contempt under the provisions of 18 U.S.C. § 401. The formulations of the requisite intent cannot be expected to be uniform in all contexts.

Our disposition of the appellant's first argument makes it unnecessary to discuss his other contentions.

REVERSED.

BLUMENFELD, District Judge, concurring:

Appellant has been convicted of criminal contempt pursuant to 18 U.S.C. § 401(1) for obstruction of the administration of justice. As with most crimes, criminal contempt occurs only when there is a concurrence of a prohibited *act* and some form of criminal *intent.* *Cf. Morissette v. United States*, 342 U.S. 246, 250–52, 72 S.Ct. 240, 96 L.Ed. 288 (1952). This case requires an articulation of the precise nature of both of these elements of the offense. I agree that a conviction for criminal contempt in the context of this case cannot be based on a communication made solely with "wilful and wanton disregard of whether the jurors might hear it." However, the standard for determining what conduct is prohibited merits further explication.

Title 18 U.S.C. § 401(1) prohibits misbehavior which rises to the level of an obstruction of the administration of justice. I do not agree that this element of the offense is satisfied merely because Smith's conversations "had the tendency to influence improperly the actions of the jury." Because the allegedly contemptuous conduct is comprised solely of speech, it is my view that a "tendency to influence" standard of wrongful conduct does not comport with the protections afforded by the First Amendment.[1]

In defining the proscribed conduct, the court's opinion relies on *Kelly v. United States*, 250 F. 947 (9th Cir. 1918), *cert. denied*, 248 U.S. 585, 39 S.Ct. 182, 63 L.Ed. 433 (1919), in which two defense attorneys conversed with and bought drinks for two jurors during the course of the trial of their clients. However, the *Kelly* court was not dealing with pure speech as is involved in this case; as such, it did not consider the First Amendment implications that most be coped with here.[2]

At one time, the Supreme Court did find that speech having a "bad tendency" was not protected by the First Amendment, *see,*

---

**1.** Appellant argues that the First Amendment affects the requisite level of intent. However, the impact of the First Amendment is more properly directed to the type of conduct that may be deemed wrongful.

**2.** The trial court relied upon *Sinclair v. United States*, 279 U.S. 749, 49 S.Ct. 471, 73 L.Ed. 938 (1929), in which the Court upheld criminal contempt convictions for detective surveillance of jurors. There, the Court found that it was not essential to show actual contact with a juror or that a juror had knowledge of being observed. Rather, "[t]he reasonable tendency of the acts

done is the proper criterion." *Id.* at 764, 49 S.Ct. at 476.

However, much like *Kelly, Sinclair* did not involve contemptuous conduct comprised solely of speech and the Court did not have to deal with the impact of the First Amendment on the appropriate standard of wrongful conduct. Therefore, the trial court's reliance on *Sinclair* was misplaced. We are concerned here with speech expressing a political view on the desirability of an income tax, as distinguished from statements offering threats or bribes to a juror which are more akin to acts and, therefore, beyond the protection of the First Amendment.

e. g., *Gitlow v. New York*, 268 U.S. 652, 667, 45 S.Ct. 625, 69 L.Ed. 1138 (1925); but, this test has been replaced by one affording greater First Amendment protection. The distinction between earlier and later cases may be narrow and nice, but it ought not be ignored.

In a series of cases beginning with *Bridges v. California*, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941), continuing with *Pennekamp v. Florida*, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946) and *Craig v. Harney*, 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947) and culminating in *Wood v. Georgia*, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962), the Supreme Court has held that there must be a "clear and present danger" to the administration of justice before an out-of-court publisher of a statement may be punished for contempt. "Clear and present danger" has been described in the following way: "The fires which [the expression] kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil." *Wood v. Georgia*, 370 U.S. at 385, 82 S.Ct. at 1370, quoting, *Craig v. Harney*, 331 U.S. at 376, 67 S.Ct. 1249.

Of course, unlike any of the above cited cases, we are concerned here with communications to petit jurors, rather than to a judge or to a grand jury. I recognize that outside communications to a juror involve a greater vulnerability to the impartial administration of justice. The evil which may be engendered is that the jury will be so influenced as to be unable to render an impartial verdict after a complete trial solely on the evidence presented and on the law in conformity with the instructions of the court.[3] However, this added risk of danger has no bearing on the proper First Amendment standard, but only on the proper application of that standard to the instant facts. Thus, while a clear and present danger to the administration of justice may be more easily found in a juror contact case than in other situations, the applicable First Amendment standard remains constant. *Cf. Eaton v. City of Tulsa*, 415 U.S. 697, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974); *In re Little*, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972); *see also, Nebraska Press Ass'n. v. Stuart*, 427 U.S. 539, 562, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).[4]

We deal here with a public trial which had some political overtones. The allegedly contemptuous conduct was comprised solely of speech expressing a view about the desirability of an income tax. The First Amendment requires speech constituting a clear and present danger to the administration of justice before a contempt sanction can be imposed. Therefore, in my opinion, a finding of a mere "tendency" to improperly influence jurors is not adequate to support a contempt conviction.

---

**3.** As Judge Learned Hand put it, the question to be asked is whether "the gravity of the 'evil,' discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger." *United States v. Dennis*, 183 F.2d 201, 212 (2d Cir. 1950), *aff'd*, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

**4.** In *Wood v. Georgia*, 370 U.S. 375, 389, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962), the Court distinguished the dangers involved in communications to a grand jury and to a petit jury. However, as I read its opinion, the Court did not reject the "clear and present danger" standard as being the proper test, but only commented that its application might result in a different conclusion in the highly sensitive context of contact with a petit juror.

Nor does the Court's opinion in *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), upholding a narrowly drawn Louisiana statute prohibiting picketing near a courthouse, lead to the conclusion that the "clear and present danger test" is inapplicable here. There, the Court was dealing with mixed speech and conduct, that is, picketing. In any event, the Court did not have to decide whether the clear and present danger test was applicable because it concluded that even if applied the test was met in the circumstances of that case.