UNITED STATES of America, Appellee,

v.

John Francis TRUDELL, Appellant.

No. 77–1295.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1977.

Decided Oct. 12, 1977.

Terry H. Gilbert, Cleveland, Ohio, argued and filed brief for appellant.

Gary Annear, Asst. U. S. Atty., Fargo, N. D., (argued) and James R. Britton, U. S. Atty., Fargo, N. D., on brief, for appellee.

Before STEPHENSON, Circuit Judge, MARKEY, Chief Judge *, and WEBSTER, Circuit Judge.

WEBSTER, Circuit Judge.

Appellant John Francis Trudell was convicted of criminal contempt in violation of 18 U.S.C. § 401(3).[1] He was sentenced by the District Court to the custody of the Attorney General for a term of sixty days.

On appeal, appellant contends (1) that the District Court's Standing Order, which he was found to have violated, is both vague and overbroad, (2) that the evidence was insufficient to establish a violation of 18 U.S.C. § 401, and (3) that the sixty day sentence imposed by the District Court was inappropriate and excessive. After a full review of the record, we affirm the conviction.

Appellant was arrested and charged with criminal contempt following a disturbance that occurred on March 30, 1977 during the murder trial of Leonard Peltier, a native American. Peltier's trial received national press coverage and was attended by a large number of spectators, many of whom, including appellant, were also native Americans.

During the morning recess in the Peltier trial, Deputy United States Marshals Richard Bippus and Carl Moya were standing in the hallway in front of the courtroom where the Peltier trial was being conducted. Appellant, who happened to be in their vicinity was walking by when Deputy Bip-

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. 18 U.S.C. § 401 provides:
   A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

   \* \* \* \* \* \*

   (3) Disobedience or resistance to its lawful writ, process, order, rule, decree or command.

pus pointed at him. Appellant asked the Deputies whether they wished to talk with him. Deputy Bippus indicated he did and asked appellant to cross the hallway and join the Deputies. Appellant refused, insisting instead that the Deputies come over to the side of the hallway where he was standing.

Deputy Bippus then asked appellant to read the Court's Standing Order which was conspicuously posted. Paragraph three of the Standing Order provides:

> No person shall loiter, sleep, or conduct himself in an unseemly or disorderly manner in the rooms, halls, courtrooms, or entry-ways of any such building or courtrooms, or on any stairway leading thereto; or otherwise interfere with or obstruct judicial activities or proceedings.

Appellant rejected the Deputy's request claiming that he was not compelled to read such orders. Deputy Bippus informed appellant that if he did not read the Order, and if he continued his courtroom behavior,[2] he would be asked to leave. Appellant asserted his right to attend the trial and shouted profanity at Deputy Bippus. The Deputy quickly reprimanded him because several women were in the hallway. Appellant replied with more profanity. Deputy Bippus then told appellant that he would not be admitted to the courtroom and asked him to leave. Appellant remained in the hallway despite a second request by Deputy Bippus that he leave.

At about this time, Deputy Dean was preparing to escort the jury to the courtroom for the afternoon session of the Peltier trial. During the Peltier trial the jury was sequestered. Deputy Bippus testified that it was a practice of the United States Marshal's office to keep the hallways and corridors clear when a sequestered jury was being escorted to and from the courtroom in order to avoid the appearance of tampering.

Deputy Dean instructed appellant, who was standing directly in front of the jury room and the entrance to the courtroom, to step to the end of the hallway so that the jury could be led into the courtroom. Appellant refused to move. He was told that the hallway had to be cleared and if he did not move he would be taken into custody. At that moment Deputy Clay stepped out of the courtroom and told Deputy Dean that it was time for the jury to return to the courtroom. The jury was delayed for a short time by appellant's refusal to move. Appellant was then taken into custody and the jury was escorted into the courtroom. A contempt hearing was conducted the next day. See Fed.R.Crim.P. 42(b).

## I.

It is widely recognized that a court has inherent authority to punish contemptuous behavior that obstructs the judicial process. See *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Wood v. Georgia,* 370 U.S. 375, 383, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1961); *United States v. Fidanian,* 465 F.2d 755, 757 (5th Cir.), *cert. denied,* 409 U.S. 1044, 93 S.Ct. 540, 34 L.Ed.2d 494 (1972). 18 U.S.C. § 401 codifies the inherent and necessary power to punish disobedience or resistance to court orders. See *U. S. Steel Corp. v. United Mine Workers of America,* 393 F.Supp. 942, 946 (W.D.Pa.1975), *vacated on other grounds,* 534 F.2d 1063 (3d Cir. 1976). Spectators as well as persons directly involved in the judicial proceeding are subject to all reasonable court orders. *United States v. Abascal,* 509 F.2d 752, 754 (9th Cir.), *cert. denied,* 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975).

Appellant contends that the District Court's Standing Order is vague and over-

---

**2.** Deputies Bippus and Moya testified that they had received complaints about appellant's previous courtroom disturbances. During a sidebar conference, appellant was said to have uttered loud sounds which were disturbing to several spectators and the jury. Deputy Moya testified that on another occasion appellant told a spectator, "[T]he trial [has been] a railroading of the defendant," and said in a loud tone, "[W]hy don't they just give a gun to all of the attorneys and let them shoot an Indian."

broad.[3] The vagueness doctrine incorporates notions of fair notice or warning. *Smith v. Goguen,* 415 U.S. 566, 572, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). In order to successfully challenge a statute on vagueness grounds, a litigant must make a showing that the challenged statute lacks specificity as to his own behavior and not as to some hypothetical situation.[4] *Big Eagle v. Andera,* 508 F.2d 1293, 1297 (8th Cir. 1975). *See Parker v. Levy,* 417 U.S. 733, 755–57, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

▪ Under the facts of this case, however, we need not reach this question. The evidence shows that the Deputy Marshals, through repeated warnings, sufficiently apprised appellant that he was obstructing the Court's processes. When directed to walk to the end of the hallway so that the jury could return to the courtroom, he refused. Thus, appellant "had notice" that his conduct was improper and in violation of the Court's Standing Order.

▪ Appellant also claims that the Order is overbroad and inhibits the exercise of protected First Amendment rights. *See, e. g., Gooding v. Wilson,* 405 U.S. 518, 520–22, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). Appellant's reliance on this doctrine in this context is misplaced. While the testimony of Deputy Bippus disclosed a number of reasons for appellant's arrest, it is clear from the record that the decisive factor was appellant's interference with the orderly processes of the court. Appellant was not engaging in any activity protected by the First Amendment which would trigger the application of the overbreadth doctrine; rather, by his own admission he was staging a protest resulting in the obstruction, albeit temporary, of the trial itself.

▪ The inherent power of a judge to require order in and around the courtroom,

including the immediately adjacent areas, is fundamental to the administration of justice. *See Illinois v. Allen, supra,* 397 U.S. at 343, 90 S.Ct. 1057; *United States v. Seymour,* 373 F.2d 629, 630 (5th Cir. 1967). To that end he may authorize and direct subordinate court officials and marshals to assure that such required order is observed. It is appellant's conduct, not his words, which offended the court's lawful order.[5]

## II.

Appellant also contends that the evidence presented at trial was legally insufficient to support a conviction under 18 U.S.C. § 401. The Supreme Court, construing the first paragraph of § 401, has required an actual obstruction of justice as a prerequisite to contempt. *In re McConnell,* 370 U.S. 230, 234, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1961). The Court has warned trial courts to "be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Brown v. United States,* 356 U.S. 148, 153, 78 S.Ct. 622, 626, 2 L.Ed.2d 589 (1958); *see In re Little,* 404 U.S. 553, 555, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972); *cf. Eaton v. City of Tulsa,* 415 U.S. 697, 698, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974) (single use of profanity by witness not directed at court or any officer thereof could not support contempt conviction).

▪ Were we faced only with appellant's indiscreet use of profanity, we would be compelled to examine his sufficiency claim more closely. But appellant did more. He refused to comply with the Deputies' instructions to clear the hallway and thereby delayed and obstructed the Peltier trial. The delay was brief, but it was brief because appellant was promptly taken into custody.

Here we are faced with a Court's Standing Order. Since violation of the Order resulted in the imposition of a punitive sanction, the difference is irrelevant.

---

**3.** The government points out that appellant, who elected to conduct his own defense, did not raise these claims in the District Court. In view of his pro se defense, we are reluctant to hold that his failure to raise these issues precludes his assertion of them in this court.

**4.** Most of the litigation in the vagueness area has concerned challenged criminal statutes.

**5.** Appellant's contention that the Standing Order, as enforced by the Deputy United States Marshals, violates the Separation of Powers doctrine, is clearly without merit.

The Circuits have been unable to agree on the precise level of intent required to support a conviction under 18 U.S.C. § 401. *See, e. g., United States v. Smith,* 555 F.2d 249, 251 (9th Cir. 1977) (statement made knowingly and intentionally); *Richmond Black Officers v. City of Richmond,* 548 F.2d 123, 129 (4th Cir. 1977) (person must have acted willfully, contumaciously, intentionally and with a wrongful state of mind); *In re Williams,* 509 F.2d 949, 960 (2d Cir. 1975) (contemnor must have intent to obstruct, disrupt or interfere with the administration of justice); *In re Joyce,* 506 F.2d 373, 378 (5th Cir. 1975) (requirement of a willful, contumacious, or reckless state of mind); *United States v. Seale,* 461 F.2d 345, 368 (7th Cir. 1965) (a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful). The Ninth Circuit has recently stressed the importance of the context within which such a conviction arises as bearing on the question of intent. *United States v. Smith, supra,* 555 F.2d at 166. *See In re Little, supra,* 404 U.S. at 556, 92 S.Ct. 659 (Burger, C. J., concurring).

■ We are satisfied that appellant possessed the requisite intent to support a contempt conviction under any of the above standards. He deliberately and repeatedly ignored the Deputies' instructions to clear the hallway so that the jury could return to the courtroom. Moreover, he was specifically told that his refusal to do so was obstructive and improper. His refusal to comply with the Deputies' requests was willful and intentional and resulted in an actual obstruction of justice.[6] *See In re Brown,* 147 U.S.App.D.C. 156, 162, 454 F.2d 999, 1005 (1971). *Compare Finney v. Arkansas Board of Correction,* 505 F.2d 194, 213 (8th Cir. 1974).

**III.**

Finally, appellant asserts that the sixty day sentence imposed by the District Court was inappropriate and excessive.

The Supreme Court has recognized the peculiar power of the federal courts to revise sentences in contempt cases. *Cheff v. Schnakenberg,* 384 U.S. 373, 380, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1965). Appellate courts have a responsibility to insure that the contempt power is not abused. *Green v. United States,* 356 U.S. 165, 188, 78 S.Ct. 632, 2 L.Ed.2d 672 (1957); *Board of Education v. York,* 429 F.2d 66, 70 (10th Cir. 1970), *cert. denied,* 401 U.S. 954, 91 S.Ct. 968, 28 L.Ed.2d 237 (1971).

The Supreme Court has enunciated the factors to be considered by a trial court in determining the appropriate sentence in a criminal contempt proceeding:

> [T]he trial judge may properly take into consideration the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future.

*United States v. United Mine Workers of America,* 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947), *cited in, In re Van Meter,* 413 F.2d 536, 538 (8th Cir. 1969).

■ In the highly charged atmosphere of this particular criminal proceeding, we cannot say that the sentence imposed was manifestly excessive or that it was applied with reference to an erroneous standard. We, therefore, affirm the judgment of the District Court.

We add one postscript. Appellant served a part of his sixty day sentence before being admitted to bail pending appeal.[7]

---

6. Appellant asserts that he could not knowingly and willfully have violated the Standing Order because at no time did he read it. He testified, however, that he had attended fifteen trials in the past three years, the rules in most courts were generally the same and he would have acted similarly had he read the Order. Moreover, the Deputy Marshals informed appellant that his conduct was obstructing the jury's return to the courtroom.

7. The record does not make clear the number of days appellant was incarcerated before his bail release. At oral argument, the parties disagreed over whether he had served five or ten days.

Tensions have undoubtedly eased. A Rule 35 motion for reduction of sentence was filed after the appeal was taken, at a time when the District Court was without jurisdiction to entertain it. We have no doubt that the experienced District Judge will take into account all pertinent factors in passing upon the pending motion if renewed following issuance of our mandate.

Affirmed.