**In re Charles R. B. KIRK.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles R. B. KIRK,
Defendant-Appellant.**

Nos. 79–1733, 79–1820.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 1980.

Decided March 9, 1981.

Marcus S. Topel, San Francisco, Cal., for defendant-appellant.

Eric Swensen, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY, TANG and CANBY, Circuit Judges.

DUNIWAY, Circuit Judge:

Charles Kirk, a Deputy Attorney General of California, appeals from two convictions for criminal contempt under 28 U.S.C. § 636(d) (now at 28 U.S.C. § 636(e) and 18 U.S.C. § 401, respectively). We reverse both convictions.

### I. *The Facts.*

Because we reverse for lack of evidence, we state the facts in detail.

In 1976 one Elmer "Geronimo" Pratt filed a civil rights action in the district court against the California Department of Corrections. *Pratt v. Rees, et al.,* D.C. No. C–76–1069 (N.D.Cal.). Pratt, an inmate of San Quentin, charged that he had been placed in special security housing, known as the "hole," because of his political beliefs and associations. The court referred all discovery matters in *Pratt v. Rees* to Magistrate Woelflen in December, 1978.

In mid-January, 1979, Pratt subpoenaed all documents in the possession of the California Department of Justice (DOJ) and various of its branches—all nonparties to the litigation—relating to Pratt's association with the Black Panther Party between August 1, 1968 and April 1, 1972. Kirk was assigned to represent the DOJ and filed responses to the subpoena refusing to produce any of the documents "on the ground that any of the records (*if extant*) . . . are confidential and privileged under law." (emphasis ours) Further, on February 8, 1979, in his response to Pratt's motion to compel discovery, Kirk argued that the

"records which the Department of Justice may (*or may not*) have concerning plaintiff's Black Panther Party membership" (emphasis ours) were in any event irrelevant to Pratt's suit against the Department of Corrections because Pratt had made no showing that the Department of Corrections had relied upon, or had access to, the documents sought in the subpoena.

In response to Pratt's contention that the DOJ's assertion of privilege "without first even attempting to locate and read the documents in question" was invalid, Kirk argued that a review of each document was not required in this case and that if it were, the DOJ would need more time to locate the files and submit appropriate affidavits. Kirk did state, however, that it was safe to assume that the DOJ has possession of "rap sheets" on Pratt that would fall within the terms of the subpoena and also that at least one of the DOJ's agencies had already reported that it held no records described in the subpoena.

At a hearing before Magistrate Woelflen on February 9, 1979, Kirk argued the DOJ's position that the documents were privileged and irrelevant and stated to the Magistrate: "the time ... given us to respond to his motion to compel has been so short that we can't go through, we haven't been able to locate some of the files. We know that some exist and some don't exist." Magistrate Woelflen quashed the subpoena as overbroad.

On March 16, 1979, Pratt's attorneys presented evidence indicating the relevance of the documents that they had requested and further sought to expand the subpoena to include all documents relating to Pratt's association not only with the Black Panther Party but also with the Black Liberation Army and the Black Guerilla Family, and not merely from 1968 to 1972 but from 1968 to the present. Toward the end of the hearing, the Magistrate stated his understanding of the issue before him:

Well, what I have to decide ... is *if there are certain records* relating to the Plaintiff alluding to his involvement, membership, status in the Black Panther

Party, the Black Guerrilla Family, the Black Liberation Army, *if they, in fact, are in the possession of the Department of Justice and the various sub-agencies* ... should they be produced? (emphasis ours)

On March 27, 1979, the Magistrate issued an order granting Pratt's expanded discovery motion for the period 1968–1972. Kirk sought review of the order in the district court, and filed a Motion for Reconsideration on April 6. Kirk continued to maintain that the "information which DOJ may (*or may not*) have concerning" (emphasis ours) Pratt could not be relevant. He argued that because resolution of the DOJ's claim of privilege might ultimately require both the court and the Attorney General to review each document for a claim of privilege, a great deal of effort could be avoided were the court to decide then rather than later that the documents were not relevant. Kirk also argued that even if the DOJ's arguments as to relevance were rejected, the DOJ was entitled to an in camera hearing as to its claim of privilege before any documents should be produced to Pratt.

On April 27, 1979, Judge Conti held a hearing on the DOJ's motion for reconsideration. In an exchange that formed the basis for Kirk's second contempt conviction, the court asked Kirk: "Well, where are the documents in your possession which relate to [Pratt's] activities in the Black Panther Party, Black Guerilla Family, etc., from August '68 to August '72?" Kirk responded: "They are in my files in Sacramento." Following this exchange, Kirk further informed the court that the Attorney General had not yet examined the files or made separate claims of privilege for each document, and he again urged the court to decide the relevance question before requiring the Attorney General and then the Magistrate to undertake this task.

The court challenged and then rejected Kirk's assertion that the documents were irrelevant:

THE COURT: Well, we don't know whether they are relevant or not because

nobody has taken a look at them, so you don't know whether they are relevant.

MR. KIRK: Yes, we do, Your Honor.

THE COURT: You have, but you are not exactly the most, you know, independent individual on this.

MR. KIRK: No, I realize that, but here is why we can say, in this case, that they aren't relevant.

.    .    .    .    .

... [T]he defendants in this case have stated, under oath, that they didn't look at any documents except the ones the plaintiffs have already seen.

.    .    .    .    .

THE COURT: ... It's very simple. There is relevancy here.

Finally, the court considered "whether or not the information in those documents are such that should require an in camera inspection by the Magistrate to determine *whether or not they are there* and whether or not they are relevant and *if they are there* and they are relevant, [Pratt is] going to see them." (emphasis ours) The court concluded that there ought to be an in camera review of the documents and so ordered.

On May 1, 1979, Kirk wrote to Magistrate Woelflen that he was as "yet unable to report when Department of Justice will have the documents (*if any*) assembled" (emphasis ours) for the in camera hearing. On May 17 he informed the Magistrate that "[t]he California Department of Justice has prepared all documents covered" by the Magistrate's March 27 order for in camera review. A copy of this letter was also sent to Pratt's attorney.

Finally, on May 23, 1979, the in camera hearing was held and Kirk informed the Magistrate that the DOJ did not have any documents concerning Pratt and subject to the order. Kirk stated that it was not until some time after the April 27 hearing before Judge Conti that he had become aware that no documents existed, and he presented an affidavit from the supervisor of the Organized Crime and Criminal Intelligence Branch of the DOJ stating that the DOJ's

absence of documents was itself confidential information.

Accordingly, Kirk asked the Magistrate to sign a proposed order which would not reveal the absence of the documents: "This Court has reviewed the information supplied by the California Department of Justice ... and has determined that there are no documents in the possession of the Department of Justice which are relevant to the plaintiff's case or as to which the plaintiff's need for the information outweighs the State's interest in confidentiality." Although assuring Kirk that he understood the DOJ's position, the Magistrate expressed some concern that the proposed order might be misleading and indicated that he might wish to redraft it. Kirk readily agreed and the hearing ended. Following the hearing, the Magistrate went immediately to Judge Conti and discussed with him what had just happened.

Out of the above set of facts arose Kirk's two convictions for criminal contempt: the first for his course of conduct before Magistrate Woelflen and the second for his statements to Judge Conti at the April 27 hearing.

On July 18, 1979, acting under 28 U.S.C. § 636(d), Magistrate Woelflen filed with the district court a certification of facts constituting contempt of court by Kirk. The Magistrate stated that Kirk's May 1 and May 17 letters had intentionally misled the Magistrate into believing documents existed when Kirk knew that they did not and that "particularly disturbing" was Kirk's proposed order of May 23 which would have used the court to hide the DOJ's lack of documents relating to Pratt. The certification directed Kirk to appear before Judge Conti to show cause why he should not be held in contempt of court.

At a contempt hearing held on August 10, 1979, before Judge Conti, Kirk denied any intent to mislead either Judge Conti or the Magistrate. He testified that he had assumed that the DOJ had documents concerning one so well known as Pratt and that it was not until early May that he

learned otherwise. In early February he had ordered a search for all documents within the subpoena; he had then cancelled the search when the Magistrate quashed the subpoena, and renewed the search only on May 1 after Judge Conti upheld the Magistrate's March 27 order.

He testified further that he believed that Judge Conti understood that the DOJ had not yet looked to see if there were any documents at the time of the April 27 meeting. And he explained that he had phrased the May 17 letter to the Magistrate as he had because, although he believed that he had an obligation to send a copy to Pratt's lawyers, he could not reveal to them the DOJ's lack of documents relating to Pratt in light of the DOJ's position that this information was privileged. He explained further that he had prepared the proposed order of May 23 at the last minute request of the Magistrate and that he had attempted to design the order so as to shield the DOJ from disclosure of the absence of the documents without actually stating a falsehood.

At the conclusion of the hearing, Judge Conti made findings and concluded that "Mr. Kirk's willful misconduct" before the Magistrate "constitutes criminal contempt of court." The court ordered Kirk to pay a fine of $500 and further ordered him to appear at a second hearing to show cause why he should not be found again in criminal contempt for his statement to the court at the April 27 hearing that the documents "are in my files in Sacramento."

On October 19, 1979, Judge Conti conducted the second contempt proceeding against Kirk. After the court denied various of Kirk's motions relating to his first conviction, Kirk's counsel "submitted" the second matter without presenting any defense. The court found that Kirk's statement to the court on April 27 was a lie and was criminal contempt of court. After considering subsequent motions filed by Kirk's counsel as well as an affidavit filed by Kirk explaining his statement of April 27, the court issued a written order on November 30 making findings and holding Kirk in

contempt of court. Kirk was sentenced to ten days in prison. Kirk appeals from both convictions.

## II. *The Merits.*

Kirk argues that neither conviction was supported by the evidence. We agree and therefore reverse without reaching Kirk's other arguments.

In a case of criminal contempt, intent must be proved beyond a reasonable doubt. *In re Floersheim*, 9 Cir., 1963, 316 F.2d 423, 428. Although the precise nature of this intent is subject to controversy, *see United States v. Smith*, 9 Cir., 1977, 555 F.2d 249, 251, we recently adopted the Seventh Circuit's position that " . . . [A]n attorney possesses the requisite intent only if he knows or reasonably should be aware in view of all the circumstances, especially the heat of the controversy, that he is exceeding the outermost limits of his proper role and hindering rather than facilitating the search for truth." *Hawk v. Cardoza*, 9 Cir., 1978, 575 F.2d 732, 734–35, quoting *In re Dellinger*, 7 Cir., 1972, 461 F.2d 389, 400. Moreover, there can be no conviction for criminal contempt under 18 U.S.C. § 401 or 28 U.S.C. § 636(d) unless there has been such a "[m]isbehavior . . . as to obstruct the administration of justice" (§ 401(1)), a "material disruption or obstruction" of justice, *United States v. Seale*, 7 Cir., 1972, 461 F.2d 345, 369.

After painstaking review of the record, and viewing the evidence in the light most favorable to sustaining the conviction, we do not find that the trier of fact "could rationally conclude from the evidence presented that guilt was established beyond a reasonable doubt." *United States v. Hudson*, 9 Cir., 1979, 609 F.2d 1326, 1329; *see also In re Joyce*, 5 Cir., 1975, 506 F.2d 373, 376–77.

The district court based Kirk's first conviction for contempt before the Magistrate on several findings. It found that Kirk had resisted discovery on the basis of irrelevance and privilege without reviewing the documents; that Kirk knew on April 27 that no documents existed despite his repre-

sentation to the court on that day; that Kirk's letters to the Magistrate on May 1 and May 17 were deliberately misleading; that Kirk's proposed order of May 23 sought "willfully and intentionally" to mislead Pratt and his counsel and sought "to use the judicial process to shield the DOJ from disclosing the non-existence of the documents."

These findings are either unsupported by the evidence or fail to show criminal intent. To begin with, as our recitation of the facts above indicates, both the court and the Magistrate were aware that no review of the documents had been undertaken when Kirk made his claim of privilege and irrelevance. Indeed, Kirk argued that it was to avoid just such a review that he sought an early ruling on relevance. Further, the record indicates that it was not until the first week in May that Kirk knew that no documents existed.

Nor do the letters of May 1 and May 17 establish criminal intent. The letter of May 1 explicitly indicated that there might not be any documents and Kirk was not then aware that there were not any documents. Kirk's letter of May 17 may have been poorly drafted, but again evidence of criminal intent is lacking. The DOJ took the position that the absence of the documents was itself privileged information which must not be revealed, and Kirk testified to his belief that professional ethics required him to send a copy of the letter to Pratt's counsel. In any event, whatever misunderstanding was caused by the letter was quickly dispelled at the May 23 hearing, and the Magistrate testified that he had not been obstructed in his work by the misunderstanding.

Finally, although the Magistrate was "particularly disturbed" by Kirk's proposed order, we cannot find that the suggestion of the order constituted criminal contempt. The DOJ's contention, whether well founded or not, that the nonexistence of the documents should itself be kept confidential was entitled to consideration. *See Phillippi v. Central Intelligence Agency*, D.C. Cir., 1976, 546 F.2d 1009, 1013 n.7. Certainly, it

was not improper for Kirk to present this position to the Magistrate or, in the light of that position, to suggest an order which would mask whether or not any documents existed. The order may have needed redrafting, to which Kirk agreed, but this is not a basis for criminal contempt.

Kirk's second conviction for criminal contempt was based on his statement to Judge Conti on April 27 that the documents "are in my files in Sacramento." Although the statement was undoubtedly misleading on its face, in the circumstances of the case it cannot support a conviction for criminal contempt. Kirk explained in an affidavit, considered by the court before its November 30 order of conviction, that he had understood the court to ask where the DOJ's files were located and that by "my files" he was simply identifying himself with the agency. More significantly, at the close of the hearing the court itself appeared to state its understanding that the documents might not exist, when it referred to "an in camera inspection by the Magistrate to determine whether or not they [the documents] are there . . . and if they are there . . . [Pratt is] going to see them." Kirk testified that he believed that he and the court understood one another on this matter, and in this, the court's statement supports him.

Moreover, Kirk had reason to believe at the time of the hearing that at least some documents—in particular "rap sheets"— were subject to the discovery order and he understandably assumed that the DOJ had other documents on one so notorious as Pratt. Despite this assumption, in almost all of his papers filed with the court Kirk had been careful to note that the documents might or might not exist. Finally, Kirk's argument on relevance in no way implied that he had reviewed any documents; he simply argued that Pratt had not shown that the Department of Corrections had used any DOJ documents.

We can understand how confusion occurred between Kirk, the court, and the Magistrate in this case. Nor is Kirk without his share of responsibility. But we

cannot find on this record sufficient evidence to support beyond a reasonable doubt convictions for criminal contempt.

The judgments are reversed. Under the decision in *Burks v. United States*, 1978, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, the charges against Mr. Kirk must be dismissed.

TANG, Circuit Judge, dissenting.

I respectfully dissent. The critical inquiry is whether *any* rational trier of fact could find guilt beyond a reasonable doubt when *"all of the evidence"* is considered in the light most favorable to upholding the conviction. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Kipp*, 624 F.2d 84, 84 (9th Cir. 1980). "[T]his inquiry does not require a reviewing court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Jackson*, 443 U.S. at 318–19, 99 S.Ct. at 2789, *quoting Woodby v. INS*, 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966). Rather, it is for the trier of fact *"fairly to resolve conflicts in the testimony,* to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

The majority acknowledges this standard, yet, in my view, draws reasonable inferences in favor of Kirk. While the evidence is consistent with Kirk's theory, it is also consistent with the Government's theory. A trier of fact reasonably could conclude that the DOJ and Kirk delayed discovery and formulated statements as they did because they did not want Pratt and others to learn that the DOJ had no records. In order to keep that information from Pratt, they also kept it from the court, leading the court to believe records did exist and delaying the discovery. It is reasonable to conclude that the statements deliberately were phrased to convey the desired misinformation without expressly lying to the court.

In reviewing the record as a whole, I find that Kirk's pervasive lack of candor amounts to a contumacious obstruction of the administration of justice, and I thus would affirm on the sufficiency of the evidence question. I agree with the district court's comments in this case: "Honesty and integrity should be paramount in the dealings of all attorneys with fellow attorneys and with the court. Otherwise we reduce justice to a battlefield with no holds barred."