## FLORIDA BUSINESSMEN FOR FREE ENTERPRISE, Plaintiffs-Appellants,

v.

## The CITY OF HOLLYWOOD, Defendant-Appellee.

**FLORIDA BUSINESSMEN FOR FREE ENTERPRISE, an incorporated association, High Quality Headquarters, Inc., a Florida Corp., Three Guys Distributors, Inc., a Florida Corp., and Correct Count Co., Inc., a New York Corp., Plaintiffs-Appellants, Cross-Appellees,**

v.

**The STATE OF FLORIDA, Jim Smith, as Attorney General of the State of Florida, Kenneth Katsaris, as a representative of the class of Defendants being the sixty-seven duly elected Sheriffs of the State of Florida, and Harry Morrison, etc., Defendants-Appellees, Cross-Appellants.**

Nos. 80–5769, 80–5813.

United States Court of Appeals, Eleventh Circuit.

April 23, 1982.

Rehearing Denied May 27, 1982.

See also, Fifth Circuit, 648 F.2d 956.

---

Simon, Schindler & Tripp, Tobias Simon, Sharon B. Jacobs, Miami, Fla., for plaintiffs-appellants.

Nancy A. Cousins, City Atty., Leonard Lubart, Asst. City Atty., Hollywood, Fla., for defendant-appellee.

Richard Hixson, Mitchell D. Franks, Asst. Attys. Gen., Tallahassee, Fla., for Smith & Morrison.

Paul Eakin, Tallahassee, Fla., for Katsaris.

Before THORNBERRY[*], FAY and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

This consolidated appeal involves a review of the constitutionality of drug paraphernalia laws enacted by the State of Florida and the City of Hollywood to curb the increased incidence of drug abuse. The District Court for the Northern District of Florida upheld the state "head shop" law, but declared unconstitutionally vague and severed a portion of the statute prohibiting mere possession of drug paraphernalia. The District Court for the Southern District of Florida upheld a city ordinance which defines drug paraphernalia and prohibits its possession, manufacture, or sale in Hollywood. We affirm both decisions.

## I. BACKGROUND

### A. *Proceedings Below*

Appellants, Florida Businessmen for Free Enterprise, High Quality Headquarters, Inc., and Correct Count Company, Inc. (hereinafter State Merchants), as representatives of a plaintiff class of manufacturers, distributors, and retailers of arguably out-

---

[*] Honorable Homer Thornberry, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

lawed items, sought injunctive and declaratory relief from enforcement of Florida's allegedly unconstitutionally vague and overbroad "head shop" law. The United States District Court for the Northern District of Florida granted the state's motion to dismiss and certified defendants Katsaris, Sheriff of Leon County, and Morrison, State's Attorney for the Second Judicial Circuit of Florida, as representatives of the defendant class solely for the purpose of restraint by injunction. The court declared a provision of the statute unconstitutional, upheld the remainder and issued a stay and injunction pending appeal prohibiting enforcement of the law in its entirety.

Appellants, Florida Businessmen for Free Enterprise and M. P. D'Errico & Sons, Florida, Inc. (hereinafter Hollywood Merchants), sought declaratory and injunctive relief in the District Court for the Southern District of Florida from the enforcement of an allegedly unconstitutionally vague and overbroad ordinance of the City of Hollywood, Florida. The district court denied the Hollywood Merchants' motion for a temporary restraining order, and pursuant to Rule 65(a)(2), Fed.R.Civ.P., consolidated the hearing on the preliminary injunction with the trial on the merits. On cross-motions for summary judgment, the district court upheld the ordinance under the fourteenth amendment due process clause and the first amendment and denied the Hollywood Merchants' motion for a stay pending appeal. A panel of the Fifth Circuit entered an injunction pending appeal precluding enforcement of the ordinance.

### B. *The Drug Paraphernalia Laws*

The state head shop law, Fla.Stat. §§ 893.145–.147 (Supp.1982), like its city ordinance counterpart, is modelled after the Model Drug Paraphernalia Act (MDPA) (1975), drafted by the Drug Enforcement Administration of the United States Department of Justice. *See* Appendix A (setting forth text of state statute). Unlike

the Hollywood ordinance and the MDPA, however, the state law mandates consideration of thirteen factors in determining whether an object is drug paraphernalia, whereas consideration of these same factors in the Hollywood ordinance and the MDPA is discretionary.

Hollywood, Florida, Ordinance No. 0–80–15 (Feb. 20, 1980), prohibits the use, possession with intent to use, manufacture, delivery, and advertisement of drug paraphernalia. *See* Appendix B (reprinting text of ordinance). "Drug paraphernalia" is defined as all items "used, intended for use, or designed for use" with controlled substances. A non-exclusive list of items within the ambit of the ordinance supplements the definitional section. The ordinance also permits consideration of fourteen factors in addition to "other logically relevant factors" in determining whether an object is drug paraphernalia. Section 21–82, which proscribes the manufacture and delivery of drug paraphernalia, and section 21–83, which proscribes the advertisement of drug paraphernalia, punishes the commission of those acts by one who knows or "reasonably should know" that the object will be used with illicit drugs or that the advertisement's purpose is to promote the sale of prohibited drug paraphernalia.

## II. ISSUES

We must consider (1) whether the definition of "drug paraphernalia" and the prohibition against advertising drug paraphernalia are unconstitutionally overbroad; and (2) whether the definition of "drug paraphernalia" and the scienter requirement in these laws are impermissibly vague.**

## III. OVERBREADTH

The State and Hollywood Merchants argue that the statute and ordinance are unconstitutionally overbroad because of the

---

** On cross appeal, the State argues that the District Court for the Northern District of Florida abused its discretion in declining to abstain or defer to state courts prior to declaring the provision proscribing mere possession uncon-

stitutional. The subsequent amendment of Fla. Stat. § 893.147(1) (Supp.1982) to prohibit possession *with intent to use* drug paraphernalia renders this issue moot on appeal.

broad definition of drug paraphernalia. Specifically, they contend that the "designed for use" standard sweeps into its proscription a myriad of otherwise innocent and lawful objects. They also assert that the "reasonably should know" standard of knowledge is unconstitutional because it inhibits constitutionally protected conduct. The Merchants further argue that the ban against advertising drug paraphernalia impermissibly infringes "protected commercial speech" and "protected political speech" debating drug paraphernalia laws and the use of drugs.

■ A reviewing court will sustain a facial overbreadth challenge if the enactment reaches "a substantial amount of constitutionally protected conduct" engaged in by the complainant or others. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, —— U.S. ——, —— – ——, 102 S.Ct. 1186, 1189–91, 71 L.Ed.2d 362 (1982).

■ Both the State and the Hollywood "head shop" laws forbid placing in any publication "any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug paraphernalia." Fla.Stat. § 893.147(4) (Supp.1982); Hollywood, Florida, Ordinance No. 0–80–15, § 21–83 (Feb. 20, 1980). We initially consider whether this provision infringes upon the first amendment rights of the Merchants or of others. This section is narrowly drawn to prohibit advertising promoting the sale of "drug paraphernalia" within the meaning of the head shop laws. It does not address advertisements commenting upon the wisdom or efficiency of these laws nor upon any other matter. This provision does not regulate "speech as such, but simply regulates the commercial marketing of items that . . . may be used for an illicit purpose." *Flipside*, at ——, 102 S.Ct. at 1191. We therefore hold that the scope of the advertising provisions does not embrace protected noncommercial speech.

■ Insofar as the ban implicates any commercial speech interest, we note that the enactments here are directed towards commercial activity promoting or encouraging illegal drug use. Although speech which merely "propose[s] a commercial transaction" is entitled to first amendment protection, the government may regulate or ban entirely commercial speech related to illegal activity. *Virginia State Board of Pharmacy v. Virginia Citizens Council*, 425 U.S. 748, 761, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976); *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 563–64, 100 S.Ct. 2343, 2350–51, 65 L.Ed.2d 341 (1980); *Pittsburgh Press Co. v. Human Relations Commission*, 413 U.S. 376, 388, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973). The justification for protecting commercial speech is that the free flow of information in advertising benefits the public. *Virginia State Board of Pharmacy*, 425 U.S. 763–64, 96 S.Ct. 1826–27. As the district court noted in the instant case, however,

the free flow of information concerning drug paraphernalia has a potentially deleterious effect upon the community. Having concluded that the ordinance is valid and that the possession, manufacture, and delivery of drug paraphernalia can be proscribed, a logical corollary is that advertising intended to 'promote the sale of objects designed or intended for use as drug paraphernalia' can be prohibited.

[5] *Flipside* also decided that an enactment is not overbroad merely because it may encompass "innocent" and "lawful" uses of items as well as uses with illegal drugs. —— U.S. at —— n.9, 102 S.Ct. at 1192 n.9. The Merchants' assertion that they cannot ascertain whether the statute and ordinance regulate items with some lawful uses addresses vagueness. In *Flipside*, the Court deemed such a complaint premature in a preenforcement facial challenge. —— U.S. at —— n.9, 102 S.Ct. at 1192 n.9. The Court also characterized the assertion that the provision would inhibit innocent uses of covered items as a complaint of denial of substantive due process, devoid of merit. —— U.S. at —— n.9, 102 S.Ct. at 1192 n.9. The Court stated: "A

retailer's right to sell smoking accessories, and a purchaser's right to buy and use them are entitled only to minimal due process protection.... Regulation of items that have some lawful as well as unlawful uses is not an irrational means of discouraging drug use." —— U.S. at —— n.9, 102 S.Ct. at 1192 n.9 (citations omitted).

## IV. VAGUENESS

 A law which does not impinge upon constitutionally protected conduct and thus survives an overbreadth claim may nevertheless suffer from vagueness. To succeed on their facial vagueness challenge, however, the Merchants must demonstrate that the statute and the ordinance are impermissibly vague in all of their applications. *Flipside*, at ——, 102 S.Ct. at 1191.

 Two basic requirements comprise the fourteenth amendment due process guarantee against vague statutes: Laws must provide fair warning to persons of ordinary intelligence of the persons covered and the conduct prohibited and must provide ascertainable standards of guilt to protect against arbitrary, erratic, and discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). Without sufficiently precise standards in statutes, the legislature impermissibly delegates basic policy decisions to the personal predilections of police, prosecutors, and juries. *Smith v. Goguen*, 415 U.S. 566, 576, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1976). Further, statutes defining criminal offenses must be drawn with a greater degree of precision. *Winters v. New York*, 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1945). The State and Hollywood Merchants contend that certain phraseology in the Hollywood ordinance and the Florida statute violates these constitutional criteria.

### A. *Fair Notice*

#### 1. *"Designed for Use."*

 Quoting extensively from *Indiana Chapter, NORML v. Sendak*, 631 F.2d 734 (7th Cir. 1980), the Merchants argue that the definition of drug paraphernalia as items "designed for use" with controlled substances fails to give fair notice of which items fall within the statutory prohibition. Specifically, they assert that the definition is unclear with respect to whether prohibited devices must be suited solely for drug use or may encompass multi-purpose objects which include legitimate uses. The Merchants also criticize the phrase as unconstitutionally ambiguous for failing to precisely state who is intended as designer. The Merchants thus argue that this language permits an accused to be prosecuted and convicted based on the transferred intent of another.

Like the trial courts in the instant cases, numerous courts have upheld "designed for use" language against similar challenges. *See, e.g., The Casbah, Inc. v. Thone*, 651 F.2d 551, 559–60 (8th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *Mid-Atlantic Accessories Trade Association v. Maryland*, 500 F.Supp. 834, 844–45 (D.Md.1980); *Delaware Accessories Trade Association v. Gebelein*, 497 F.Supp. 289, 291–92 (D.Del.1980). The United States Supreme Court recently decided that "designed for use" language is not unconstitutionally vague on its face. The Court held that this standard encompasses items principally used with illegal drugs as determined by the objective physical features of the object in conjunction with the intent or plan of the manufacturer. *Flipside*, —— U.S. at ——, 102 S.Ct. at 1193 (1982). The Court stated that:

> [A] business person of ordinary intelligence would understand that this term refers to the design of the manufacturer, not the intent of the retailer or customer. It is also sufficiently clear that items which are principally used for nondrug purposes, such as ordinary pipes, are not 'designed for use' with illegal drugs.

—— U.S. at ——, 102 S.Ct. at 1193.

 We therefore hold that the phrase "designed for use" refers to structural features of objects deemed inherently fash-

ioned for drug use and that the intent implicated is that of the designer (i.e., patent holder or manufacturer). We further hold that the designer's intent for a design is reflected by the objective physical characteristics of the finished product. To ensure that defendants will not be convicted based on the transferred intent of. others, we also note that the three states of mind on which the definition of drug paraphernalia relies —(1) "used," (2) "intended for use," or (3) "designed for use"—require proof of general criminal intent of the accused. *See, The Casbah, Inc. v. Thone*, 651 F.2d 551, 559 (8th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *Delaware Accessories Trade Association v. Gebelein*, 497 F.Supp. 289, 292–93 (D.Del.1980); *Record Revolution No. 6, Inc. v. City of Parma*, 492 F.Supp. 1157, 1169–70 (N.D. Ohio), *rev'd*, 638 F.2d 916, 928 & n.14 (6th Cir. 1980), *vacated and remanded*, 451 U.S. 103, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981).

### 2. *"Reasonably Should Know."*

■ The Hollywood and Florida Merchants also argue that the "reasonably should know" language in the sections defining substantive offenses is vague. The Hollywood ordinance prohibits the use, possession with intent to use, the delivery, the possession with intent to deliver, and the manufacture with intent to deliver drug paraphernalia "knowing or under circumstances where one reasonably should know" that the recipient will use the paraphernalia with controlled substances. Hollywood, Fla., Ordinance No. 0–80–15, § 21–82. The Florida Statute contains the same prohibitions. Fla.Stat. § 893.147(2). Both laws further prohibit any advertising "under circumstances where one reasonably should know" that the purpose of the advertisement is to promote the sale of objects designed or intended for use with drug paraphernalia. Fla.Stat. § 893.147(4) (Supp. 1982); Hollywood, Fla., Ordinance No. 0–80–15, § 21–83 (Feb. 20, 1980). Both trial courts in the instant case held the "reasonably should know" language constitutionally permissible. The Hollywood and State Merchants argue, however, that this con-

structive knowledge standard lacks a specific intent requirement and thus fails to give notice to innocent persons of what constitutes prohibited conduct.

■ We hold that the phrase "reasonably should know" is not impermissibly vague and adopt the reasoning advanced by the district courts. We note that proof that a defendant reasonably should have known ·something is established in substantially the same manner as actual knowledge. "Even if someone testifies that he told a defendant something, the defendant's knowledge may be inferred only if the trier of fact proves that the defendant heard, understood, and believes what he was told." *World Imports, Inc. v. Woodbridge Township*, 493 F.Supp. 428, 433 (D.N.J.1980).

Further support is found in the many statutes imposing criminal liability under a "reasonably should know" standard and which have withstood constitutional attack. *See, e.g., The Casbah, Inc. v. Thone*, 651 F.2d at 561 n.13 (collecting federal statutes). Florida courts also have construed this standard to require proof that "the circumstances of the transaction were sufficiently suspicious to put a person of ordinary intelligence and caution on inquiry." *Hutton v. State*, 332 So.2d 686, 687 (Fla. Dist.Ct.App.1976); *B. S. v. State*, 320 So.2d 459, 461 (Fla.Dist.Ct.App.1975).

We also hold that this standard is sufficiently certain to provide fair notice to persons of ordinary intelligence of its meaning and application. *See Gorin v. United States*, 312 U.S. 19, 27–28, 61 S.Ct. 429, 433–434, 85 L.Ed. 488 (1941); *United States v. Featherston*, 461 F.2d 1119, 1121–22 (5th Cir. 1972). The "reasonably should know" standard does not punish innocent or inadvertent conduct but establishes a scienter requirement that the defendant acted in bad faith, with intent or knowledge that the recipient will use the paraphernalia with controlled substances.

### 3. *Factors Relevant to Determining Drug Paraphernalia: "Legitimate Supplier".*

Section 21–80B in the ordinance and section 893.146 in the statute lists fourteen and

thirteen indicia, respectively, that law enforcement authorities must consider in determining whether an object is "drug paraphernalia." In this appeal, the Merchants attack only the factor of being "a legitimate supplier" as vague and overbroad. The relevant provision states:

> In determining whether an object is drug paraphernalia, in addition to all other logically relevant factors, the following may be considered:
>
> . . . .
>
> 11. Whether the owner, or anyone in control of the object, is a *legitimate supplier* of like or related items to the commodity, such as a licensed distributor or dealer of tobacco products . . . .

Hollywood, Fla., Ordinance No. 0–80–15, § 21–80B(11) (Feb. 20, 1980) (emphasis added); *accord* Fla.Stat. § 893.146(10) (Supp. 1982).

The district court upheld this provision in the Hollywood ordinance, stating that the "legitimate supplier" guideline "is supplemented by an example. It is clear that this indicium attempts to distinguish 'head shops,' the subject of the ordinance, from other retail establishments which might sell objects with both innocent and prohibited uses." The court in *Record Revolution No. 6 v. City of Parma*, however, deleted this same provision from the three ordinances reviewed for creating a danger of arbitrary and discriminatory enforcement. 638 F.2d 916 at 933 n.24. The district court therein stated that the reference to "legitimate suppliers" is imprecise and misleading because the ordinance applies to *all* who use, distribute, or advertise even an innocent item with the requisite intent. 492 F.Supp. 1157, 1171 (N.D.Ohio 1980).

■ We agree that the risk of discriminatory enforcement inherent in this language is more than slight. Nevertheless, we hold that appellants may raise this due process claim only in a post-enforcement proceeding where they may attempt to show that the ordinance and the statute are being enforced in an unconstitutional manner.

**B. *Adequacy of Standards for Enforcement***

■ The Merchants also assert that the "designed for use" and "reasonably should know" standards in the definition of drug paraphernalia and the legitimate supplier indicium are insufficiently explicit to prevent arbitrary enforcement. This imprecision, appellants argue, will foster selective enforcement only against "head shops" by police and prosecutors "who claim to know drug paraphernalia when they see it, but cannot define it any more precisely in advance."

■ We hold that the ordinance and statute here were drafted with sufficient specificity that this speculative danger of discriminatory and arbitrary enforcement cannot render the ordinance void for vagueness. The Merchants have introduced no evidence indicative of discriminatory enforcement. A facial challenge to the constitutionality of the subject drug paraphernalia enactments is not the appropriate time for litigating claims of selective enforcement. Regardless of the risk of discriminatory enforcement, the Merchants may raise this claim only in a post-enforcement proceeding when the possibility of selective enforcement has "ripen[ed] into a prosecution." *Flipside*, —— U.S. at —— nn.21 & 22, 102 S.Ct. at 1196 nn.21 & 22. Such abstract claims of discriminatory enforcement possess due process implications only when bolstered by specific applications of the drug paraphernalia laws.

## VI. CONCLUSION

We hold that these drug paraphernalia laws enacted by the State of Florida and the City of Hollywood are neither unconstitutionally vague nor overbroad.

We now dissolve all injunctions entered in these consolidated cases.

AFFIRMED.

## APPENDIX A

Fla.Stat. §§ 893.145–.147 (Supp.1982)

893.145 *"Drug Paraphernalia" defined*

The term "drug paraphernalia" means all equipment, products and materials of any

kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repacking, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this chapter. Drug paraphernalia is deemed to be contraband which shall be subject to civil forfeiture. The term includes, but is not limited to:

(1) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing, or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived.

(2) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances.

(3) Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance.

(4) Testing equipment used, intended for use, or designed for use in identifying, or in analyzing the strength, effectiveness, or purity of, controlled substances.

(5) Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances.

(6) Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose, and lactose, used, intended for use, or designed for use in cutting controlled substances.

(7) Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, cannabis.

(8) Blenders, bowls, containers, spoons, and mixing devices used, intended for use, or designed for use in compounding controlled substances.

(9) Capsules, balloons, envelopes and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances.

(10) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances.

(11) Hypodermic syringes, needles, and other objects used, intended for use, or designed for use in parenterally injecting controlled substances into the human body.

(12) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing cannabis, cocaine, hashish, or hashish oil into the human body, such as:

(a) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes, with or without screens, permanent screens, hashish heads, or punctured metal bowls.

(b) Water pipes.

(c) Carburetion tubes and devices.

(d) Smoking and carburetion masks.

(e) Roach clips: meaning objects used to hold burning material, such as a cannabis cigarette, that has become too small or too short to be held in the hand.

(f) Miniature cocaine spoons, and cocaine vials.

(g) Chamber pipes.

(h) Carburetor pipes.

(i) Electric pipes.

(j) Air-driven pipes.

(k) Chillums.

(*l*) Bongs.

(m) Ice pipes or chillers.

893.146 *Determination of paraphernalia*

In determining whether an object is drug paraphernalia, a court or other authority or jury shall consider, in addition to all other logically relevant factors, the following:

(1) Statements by an owner or by anyone in control of the object concerning its use.

(2) The proximity of the object, in time and space, to a direct violation of this act.

(3) The proximity of the object to controlled substances.

(4) The existence of any residue of controlled substances on the object.

(5) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows, or should reasonably know, intend to use the object to facilitate a violation of this act. The innocence of an owner, or of anyone in control of the object, as a direct violation of this act shall not prevent a finding that the object is intended for use, or designed for use, as drug paraphernalia.

(6) Instructions, oral or written, provided with the object concerning its use.

(7) Descriptive materials accompanying the object which explain or depict its use.

(8) Any advertising concerning its use.

(9) The manner in which the object is displayed for sale.

(10) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor of or dealer of tobacco products.

(11) Direct or circumstantial evidence of the ratio of sales of the object or objects to the total sales of the business enterprise.

(12) The existence and scope of legitimate uses for the object in the community.

(13) Expert testimony concerning its use.

893.147 *Use, possession, manufacture, delivery, or advertisement of drug paraphernalia*

(1) *Use or possession of drug paraphernalia.*—It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia:

(a) To plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, or conceal, a controlled substance in violation of this chapter; or

(b) To inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter.

Any person who violates this section is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(2) *Manufacture or delivery of drug paraphernalia.*—It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used:

(a) To plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, or conceal a controlled substance in violation of this act; or

(b) To inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of this act.

Any person who violates this section is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(3) *Delivery of drug paraphernalia to a minor.*—Any person 18 years of age or over who violates subsection (2) by delivering drug paraphernalia to a person under 18 years of age is guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(4) *Advertisement of drug paraphernalia.*—It is unlawful for any person to place in any newspaper, magazine, handbill, or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug paraphernalia. Any person who violates this section is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

## APPENDIX B

### ORDINANCE NO. 0–80–15

AN ORDINANCE OF THE CITY OF HOLLYWOOD, FLORIDA, AMENDING CHAPTER 21, CODE OF ORDINANCES, ENTITLED, "OFFENSES, MISCELLANEOUS PROVISIONS", BY CREATING SECTIONS 21–80

THROUGH 21–84 THEREOF, TO PRO-HIBIT THE DISPLAY OR SALE OF INSTRUMENTS, SIMULATED DRUGS, SIMULATED CONTROLLED SUBSTANCES, OR OTHER NARCOTIC PARAPHERNALIA, PROVIDING A SEVERABILITY CLAUSE, AND PROVIDING AN EFFECTIVE DATE

WHEREAS, the City Commission of the City of Hollywood, Florida, has become very concerned about the increased use of illegal drugs and controlled substances within the City; and

WHEREAS, the sale, advertisement and distribution of instruments, drug paraphernalia and simulated controlled substances, contribute to an atmosphere of community acceptance of illegal use of controlled substances; and

WHEREAS, the City Commission finds that it is in the best interest of the health, safety and welfare, of the citizens of the City to restrict access to such drug paraphernalia;

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COMMISSION OF THE CITY OF HOLLYWOOD, FLORIDA:

*Section 1*: That Chapter 21, Code of Ordinances, entitled "Offenses, Miscellaneous Provisions" is amended by creating Sections 21–89 through 21–84 to read and provide as follows:

Sec. 21–80. *Definitions.*

A. The term "Drug Paraphernalia" means all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repacking, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this ordinance. It includes, but is not limited to:

1. Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;

2. Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances;

3. Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance.

4. Testing equipment used, intended for use, or designed for use in identifying, or in analyzing the strength, effectiveness or purity of controlled substances;

5. Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances;

6. Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use, or designed for use in cutting controlled substances;

7. Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marijuana;

8. Blenders, bowls, containers, spoons and mixing devices used, intended for use, or designed for use in compounding controlled substances;

9. Capsules, balloons, envelopes and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances;

10. Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances;

11. Hypodermic syringes, needles and other objects used, intended for use, or designed for use in parenterally injecting controlled substances into the human body;

12. Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, such as:

(a) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without

screens, permanent screens, hashish heads, or punctured metal bowls;

(b) Water pipes;

(c) Carburetion tubes and devices;

(d) Smoking and carburetion masks;

(e) Roach clips: meaning objects used to holding burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;

(f) Miniature cocaine spoons, and cocaine vials;

(g) Chamber pipes;

(h) Carburetor pipes;

(i) Electric pipes;

(j) Air-driven pipes;

(k) Chillums;

(*l*) Bongs;

(m) Ice pipes or chillers.

B. In determining whether an object is drug paraphernalia, in addition to all other logically relevant factors, the following may be considered:

1. Statements by an owner or by anyone in control of the object concerning its use;

2. Prior convictions, if any, of an owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance;

3. The proximity of the object, in time and space, to a direct violation of this ordinance;

4. The proximity of the object to controlled substances;

5. The existence of any residue of controlled substances on the object;

6. Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this ordinance; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this ordinance shall not prevent a finding that the object is intended for use, or designed for use as drug paraphernalia;

7. Instructions, oral or written, provided with the object concerning its use;

9. National and local advertising concerning its use;

10. The manner in which the object is displayed for sale;

11. Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

12. Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise;

13. The existence and scope of legitimate uses for the object in the community;

14. Expert testimony concerning its use.

Sec. 21-81. *Possession of Drug Paraphernalia.*

It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this ordinance.

Sec. 21-82. *Manufacture or Delivery of Drug Paraphernalia.*

It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this ordinance.

Sec. 21-83. *Advertisement of Drug Paraphernalia.*

It is unlawful for any person to place in any newspaper, magazine, handbill, or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the adver-

tisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug paraphernalia.

Sec. 21–84. *Penalty.*

Any person who violates any term, condition, or provision of Secs. 21–81 through 21–83 shall be liable, upon conviction by a court of competent jurisdiction, to a fine not to exceed Five Hundred Dollars ($500.00), or by imprisonment not to exceed ninety (90) days, or both, at the discretion of the court. Each day of violation of any term, provision, or condition of Secs. 21–81 through 21–83 shall constitute a separate and distinct offense.

*Section 2*: It is the intention of the City Commission and it is hereby ordained that the provisions of this ordinance shall become and be made a part of the Code of Ordinances of the City of Hollywood, Florida, and the sections of this ordinance may be renumbered to accomplish such intention.

*Section 3*: If any word, phrase, clause, subsection or section of this ordinance is for any reason held unconstitutional or invalid, the invalidity thereof shall not affect the validity of any remaining portions of this ordinance.

*Section 4*: That all sections or parts of sections of the Code of Ordinances, all ordinances or parts of ordinances, and all resolutions or parts of resolutions, in conflict herewith, be and the same are hereby repealed to the extent of such conflict.

*Section 5*: That this ordinance shall be in full force and effect immediately upon its passage and adoption.