John H. BAER, individually and d/b/a Liberty Guns, Plaintiff-Appellant,

v.

The CITY OF WAUWATOSA, et al., Defendants-Appellees.

No. 83–1087.

United States Court of Appeals, Seventh Circuit.

Argued May 12, 1983.

Decided Aug. 22, 1983.

**1120**

John F. Fuchs, Shapiro, Dubin, Balistreri & Fuchs, Milwaukee, Wis., for plaintiff-appellant.

Harold D. Gehrke, City Atty. of City of Wauwatosa, Wauwatosa, Wis., for defendants-appellees.

Before POSNER and COFFEY, Circuit Judges, and GIBSON, Senior Circuit Judge.*

POSNER, Circuit Judge.

John Baer brought this civil rights suit under 42 U.S.C. § 1983 against the City of Wauwatosa (Wisconsin), its mayor, and the members of its council, alleging that, by taking away Baer's license to sell guns, the defendants had deprived him of property without due process of law, and denied him the equal protection of the laws, in violation of the Fourteenth Amendment. The district judge entered judgment for the defendants after a bench trial, and Baer appeals.

Section 6.84.020(A) of the Wauwatosa ordinances provides that "no person shall engage in the business of selling any dangerous weapon or gun without obtaining a license as provided in this chapter . . . ." Section 6.84.030 requires anyone wanting a license to apply in writing to the city clerk. The application must contain the applicant's name and address and the address of the location from which he wants to sell guns. "Upon the receipt of such application, the common council [Wauwatosa's city council] may direct the city clerk to issue such license to the applicant, upon his payment to the city treasurer of an annual license fee of ten dollars." The ordinances do not specify the term of the license, and contain no standards for denying licenses and no provisions relating to revocation or renewal.

The latest of Baer's series of one-year licenses was due to expire on June 30, 1980, when on March 6, 1980, he was convicted of second-degree sexual assault (a felony) for consensual sex acts with a 14-year-old girl. Baer was sentenced to five years probation and fined $1,000. The girl lived near his

---

* Hon. Floyd R. Gibson of the Eighth Circuit, sitting by designation.

shop, which had become a hangout for teenagers, and the sex acts had occurred in the shop. On April 23 the city attorney of Wauwatosa notified Baer that the common council's committee on permits and licenses had scheduled a hearing for May 13 to consider what to do about his gun license in light of his conviction. Baer, represented by counsel, testified at the hearing. The committee recommended to the common council that Baer's license be revoked. On May 20 the council held a public hearing, at which Baer, again represented by counsel, testified among other things that he would sell assault guns to "anybody who wants to buy them." He was allowed to cross-examine the girl's mother, and asked her, "Did she say it was lovely?" She replied, "She might have but again she is a child. She is a fourteen year old child who has had her mind twisted." The council cut off the cross-examination at that point.

The council voted unanimously to revoke Baer's license, adopting the committee's conclusion that his "conviction constitutes a violation involving moral turpitude, which substantially relates to the licensee's moral character and it is considered no longer appropriate for the licensee to possess a license for the sale of dangerous weapons." Baer's lawyer, however, told the council that his client would continue to sell guns, without a license, under section 6.84.020(B) of the ordinances. This subsection provides that the license requirement in subsection A "does not apply to rifles or shotguns used for hunting purposes, target-practice weapons, or any sporting-goods item defined as any of those items which further interest in the commonly accepted fields of sports...." Realizing that this was a glaring loophole in the city's regulation of the gun business, the common council promptly repealed subsection B. On June 5, the day the repeal took effect, the police told Baer, "you're out of the gun business." Baer closed the shop and brought this suit.

■■■ Baer seeks damages but not return of his gun license; as his counsel acknowledged at oral argument, Baer's conviction made him ineligible for a federal license to sell guns. See 18 U.S.C. §§ 923(d)(1)(B), 922(g)(1), (h)(1). His acknowledged ineligibility for a federal license makes it rather hard to see how he has been injured in a tort sense even if we assume there would have been a substantial delay before his federal license was actually revoked. A tort injury is an injury to a lawful interest. Cf. *Lossman v. Pekarske,* 707 F.2d 288, 291 (7th Cir.1983). Baer therefore cannot obtain damages under 42 U.S.C. § 1983—a tort statute, 707 F.2d at 290–91, albeit a constitutional-tort statute—for the loss of his municipal license, when federal law forbids him to sell guns. But as the defendants have not made this argument, we shall not base our decision on it.

■■■ Another issue of causation lurks in the case. A plaintiff must prove a causal link between the violation and the injury for which he is seeking damages; and, by itself, the revocation of Baer's license did not cause any injury to him, because (ignoring the question of the federal license) he could and did continue, without a city license, to sell all the guns he wanted to sell, thanks to section 6.84.020(B). This suggests that what hurt Baer was not the revocation of a license that he did not need but the repeal of the part of the ordinance that had made a license unnecessary. However, the suggestion is not entirely accurate. Baer is complaining about the repeal of the ordinance as well as about the revocation of the license; and if he can prove that the repeal was unlawful, he can complain about the revocation as well, for if his license had not been revoked the repeal would not have affected him. The repeal and revocation were the joint causes of his injury. If both were wrongful, the defendants are liable. If only one was wrongful, they are not liable, for in that case the plaintiff would have suffered the same loss even if there had been no wrongdoing, and thus he could not prove a wrongful injury, as he must in order to prevail.

■■■ To show that the revocation and repeal together, by taking away Baer's right to sell guns in Wauwatosa, violated

the due process clause of the Fourteenth Amendment, Baer must first establish that he was deprived of property, which may for these purposes be defined as what you hold securely as a result of state or federal law. *Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir.1983). A license to operate a business is therefore property if it cannot be taken away from the holder before the end of a definite period without proof of misconduct on his part, so that if he keeps out of trouble he knows he can hold on to the license for that period. See *id.* at 948–49; *Golden State Transit Corp. v. City of Los Angeles,* 686 F.2d 758, 760–61 (9th Cir. 1982); *Herz v. Degnan,* 648 F.2d 201, 208–09 (3d Cir.1981); *Medina v. Rudman,* 545 F.2d 244, 250 (1st Cir.1976) (dictum); cf. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). One may wonder how a rational person could think that a gun license issued by the city clerk of Wauwatosa conferred a secure right to engage in the gun business, even during the term of the license, when the ordinances place no limitations on the revocation of a gun license. Nor is there any suggestion that some other source of law, state or local, would prevent revocation without good cause. (Wis.Stat.1977, §§ 68.-01 *et seq.,* dealing with municipal administrative procedure, establish a right to appeal from, but no substantive requirements for, license revocations.) This lack cannot be got around by pointing out that Baer is complaining not that a piece of paper was taken away from him but that he was forced to shut down his gun shop. Although his inventory of guns and any other tangible assets of his business were property in an uncontroversial sense, Baer was not deprived of them. All he lost was his right to sell guns. That right was conferred by the license, and if Baer had no expectation reasonably grounded in law that he would be able to retain the license for a fixed term during good behavior, he was not deprived of property by the revocation.

■ There are, however, two objections to this analysis. First, as a result of the loophole in section 6.84.020(B), Baer was not really operating a licensed business. He had a license but did not need it. By repealing section 6.84.020(B) and then refusing to issue Baer a license, the defendants in effect closed down an unlicensed business, and that was a deprivation of property. The state cannot take away your house without a hearing by passing a law that homeowners need a license for their homes and then denying you the license.

[11] Second, that the ordinances allow revocation without cause is only one possible interpretation of their silence. An alternative interpretation is that since they make no reference to revocation the city has no power to revoke a license, at least without cause, during its term (a power to revoke for cause may, as we shall see later, be implicit in the ordinances). If that is true then *Reed v. Village of Shorewood* and many other cases teach that Baer had a property right that expired on June 30, the expiration date of his license, and the closing of his shop on June 5 deprived him of that right. True, his damages would be limited to the period between June 5 and June 30, since the ordinances do not create an express or implied right to have a gun license renewed and Baer does not make the argument of the plaintiffs in *Reed* that under state law nonrenewal, at least selective nonrenewal, must be treated as a form of revocation. See 704 F.2d at 949. But even though his damages would be small he would be entitled to them if he could prove he had been denied due process of law.

■ So on either ground, and probably on both, Baer crosses the property threshold. He has also shown a deprivation. It remains to consider whether he was denied due process. The procedures that the city used in this matter were constitutionally adequate. Cf. *Margoles v. Tormey,* 643 F.2d 1292, 1297 (7th Cir.1981). Baer did not have a trial in the ordinary sense but he had notice of the charge against him and he participated in two hearings at which he testified and cross-examined other witnesses, both personally and through counsel. The test of due process in its procedural aspect is not the formality of

the proceedings but whether the risk of error is kept to a reasonable level in view of the nature of the issues and the size of the stakes in the proceeding. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Sutton v. City of Milwaukee,* 672 F.2d 644 (7th Cir.1982). The stakes in this case were, if not enormous, substantial—exclusion from one's chosen business in one's chosen locale. But the procedures used gave adequate assurance against mistaken judgment, at least in a case where the basis of the official action was a felony conviction and related evidence of inappropriate behavior—evidence not only not seriously challenged, but confirmed by Baer's conduct at the second hearing.

■■■ The due process clause has been interpreted to place substantive as well as procedural restrictions on state action. Nowadays most of the substantive restrictions are based on liberties (such as liberty of speech and the press) protected by the Bill of Rights and held to be applicable to the states through the due process clause of the Fourteenth Amendment. No such liberty is claimed here. But the due process clause also places a residual substantive limitation on a state's depriving a person of life, liberty, or property: the deprivation must have a rational basis in some lawful interest of the state. See, e.g., *Schware v. Board of Bar Examiners,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). This requirement is easy to satisfy, however, and is easily satisfied in this case.

■■■ The sale of guns is fraught with both short-term and long-term danger to the public—or so at least the Wauwatosa authorities could rationally conclude, and no more is required to uphold the substantive validity of their action under the due process clause. The short-term danger is that the guns will be sold to criminals, children, and others who are, for excellent reasons, forbidden by law to have them; the long-term danger is that the circumstances of sale will encourage people to think of guns as weapons of aggression. Both forms of danger argue for excluding Baer from the gun business. His conviction for a felony showed that he did not have a law-abiding disposition and therefore could not be trusted not to sell guns to—other—ineligible persons. His testimony that he would sell assault rifles (a military weapon) to anybody was further evidence that he was untrustworthy. The fact that the conviction related to unlawful sexual activity in the gun shop itself indicated that the shop was being operated in a disreputable fashion and corroborated other evidence that the shop was a hangout for teenagers. That a shop whose principal product most teenagers are ineligible to buy should be a hangout for them raised further questions about Baer's character, as did his offensive cross-examination of the 14-year-old's mother. The improper use of guns would be encouraged by allowing a man who not only engaged in but flaunted immoral and illegal behavior to be a gun dealer.

Another due process issue, procedural in a broad sense, is the vagueness of Wauwatosa's ordinances, which contain no explicit criteria for the grant, denial, revocation, renewal, or nonrenewal of gun licenses. Although vagueness is no problem with the ordinance that repealed the exemption for the sale of guns for sporting purposes, the effect of the repeal was to put Baer under a seemingly standardless licensing regime.

The idea that excessive vagueness of an enactment violates due process has so far been pretty much limited to criminal and other penal statutes and regulations. See, e.g., *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939); *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952); *Ashton v. Kentucky,* 384 U.S. 195, 200 and n. 1, 86 S.Ct. 1407, 1410 and n. 1, 16 L.Ed.2d 469 (1966) (dictum); *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *Brennan v. Occupational Safety & Health Review Comm'n,* 505 F.2d 869, 872 (10th Cir.1974); *Florida Businessmen for Free Enterprise v. City of Hollywood,* 673

F.2d 1213, 1218–20 (11th Cir.1982). But *Aladdin's Castle, Inc. v. City of Mesquite,* 630 F.2d 1029 (5th Cir.1980), applied the void-for-vagueness doctrine to a refusal to license; and while the Supreme Court reversed, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), it did so in an opinion that suggests, without quite deciding, that the doctrine is applicable—though in attenuated form—to a licensing case: "we may even assume, without deciding, that such a standard is also too vague to support the denial of an application for a license to operate an amusement center." *Id.* at 290, 102 S.Ct. at 1075. And in *Brennan v. Occupational Safety & Health Review Comm'n, supra,* where the penal aspect was trivial (a penalty of $30 had been imposed under a noncriminal statute), the Tenth Circuit, without referring to it, wrote: "A statute which is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process." 505 F.2d at 872. Taking away a dealer's license is a much heavier penalty, in fact if not in form, than imposing a noncriminal penalty of $30; so it would be surprising if there were no limits at all on the vagueness of licensing statutes; and we shall assume, without having to decide, that there are.

■■■■ The constitutional idea of vagueness has several aspects. See *Aladdin's Castle, Inc. v. City of Mesquite, supra,* 630 F.2d at 1037, rev'd on other grounds, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). One is lack of notice of what the law requires. If a reasonable man reading Wauwatosa's ordinances would conclude that a license once issued could not be revoked before it expired, then revocation before then—revocation effective June 5 as the combined result of the earlier revocation of Baer's license and the repeal of the exception under which he continued operating his business—would be vague in the lack-of-notice sense. But it would not have been reasonable for Baer to have thought his license could not be revoked for cause. His federal license could have been, see 18 U.S.C. § 923(e), and it is almost inconceivable that the city would forswear all power

to revoke as sensitive a privilege as a gun license. So if we are right that the city had a reasonable basis for revoking Baer's license for good cause, Baer was on notice that revocation on such a basis was possible. *A fortiori* he was on notice that misconduct constituting good cause for revocation might also be a ground for nonrenewal.

■■■■ But if the ordinances authorize the common council to revoke a gun dealer's license even without good cause, they conceivably may be vulnerable to constitutional challenge for lacking standards, even if dealers are perfectly aware of the breadth of the council's authority. This is not because a standardless ordinance invites discriminatory enforcement. It does, but the time to complain about such enforcement is when it is attempted. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, 503–04, 102 S.Ct. 1186, 1191, 1195–96, 71 L.Ed.2d 362 (1982); *Florida Businessmen for Free Enterprise v. City of Hollywood, supra,* 673 F.2d at 1220; *Nova Records, Inc. v. Sendak,* 706 F.2d 782, 790–92 (7th Cir.1983). The objections lie elsewhere. There is first the devastating effect of such an ordinance on property rights already in being when the ordinance was passed. Suppose the Wauwatosa common council passed an ordinance which for the first time required that dealing in fishing gear be licensed, and authorized the denial of licenses for any or no reason. A dealer who was refused a license for no reason could complain that he had been deprived of his property—the business he was forced to close for want of a license—without due process of law, because his property was taken away from him arbitrarily. The letter of due process would be observed—the deprivation would be pursuant to a duly enacted ordinance explicitly devoid of standards and hence not vague in the lack-of-notice sense. But the spirit of due process—protection from arbitrary government action—would be violated. Cf. *Kolender v. Lawson, supra,* —— U.S. at ——, 103 S.Ct. at 1858.

Even if such an ordinance were limited to new businesses, it might be objectionable on grounds of vagueness in the absence-of-standards sense. Although since *Board of Regents v. Roth* it has been customary to think of property as the emanation of state or federal law, rather than the product of human work as John Locke thought, there may be limits, as yet untested, to this idea. If a state decreed that every new business would have to have a state license revocable at will, the older view that some property rights are natural rather than created by government—a view still occasionally encountered in the cases, see, e.g., *Medina v. Rudman, supra,* 545 F.2d at 251 (*dubitante*)—might be resurrected and might, in combination with the concept of vagueness as absence of standards, make such a law invalid under the due process clause.

■■■■■ But we need not decide these questions here. Wauwatosa's ordinances do not purport to give the common council an unlimited discretion to grant or deny, to revoke or not to revoke, to renew or not to renew gun licenses. They are silent on the standards, if any, that the common council is to use in making such determinations. Maybe there are no standards, and the council's discretion is indeed unlimited. But maybe there is an implicit standard that allows revocation only for cause. And whether or not there is, since the council did revoke Baer's license for cause we must decide whether he is the right person to raise with us the question whether the ordinances have any standards. People are not allowed to challenge statutes or ordinances because of the consequences of applying them to other people—because the statute is "overbroad" (a statute need not be vague to be overbroad, but its vagueness could make it overbroad)—except in First Amendment cases, see, e.g., *Thornhill v. Alabama,* 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–742, 84 L.Ed. 1093 (1940); *Gooding v. Wilson,* 405 U.S. 518, 520–21, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972), where there is a concern, rightly or wrongly, that the protected activity may be so fragile as to be deterrable by the mere possibility that a vague or overbroad statute might be applied to it. In cases not involving freedom of expression, the "litigant must make a showing that the challenged statute lacks specificity as to his own behavior and not as to some hypothetical situation." *United States v. Trudell,* 563 F.2d 889, 892 (8th Cir.1977). The distinction makes good sense in this case. The danger that a vague or overbroad ordinance will substantially inhibit the gun business to the prejudice of the public is too small to raise questions under the due process clause. See *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., supra,* 455 U.S. at 497 n. 8, 102 S.Ct. at 1192 n. 8.

■■■■■ Baer also argues that taking away his right to sell guns in Wauwatosa violated the equal protection clause of the Fourteenth Amendment. In part he is just restating his substantive due process argument: there was no rational basis for taking away his right to sell guns in Wauwatosa while allowing other merchants to remain in business. We have seen that there was. But he also argues that he is the victim of discrimination against felons, and he points to the Wisconsin statute that forbids "an employer or licensing agency to refuse to employ or license, or to bar or terminate from employment or licensing, any person who has been convicted of any felony, misdemeanor or other offense," unless "the circumstances of [the offense] substantially relate to the circumstances of the particular job or licensed activity." Wis. Stat.1977, § 111.32(5)(h)(2)(b). Since Baer's complaint includes no pendent state law claim, the question whether this statute was violated is of doubtful relevance. It is also doubtful whether the statute *was* violated, in view of the exception for relevant convictions. But in any event, felons are not yet a protected class under the Fourteenth Amendment. *United States v. Harris,* 537 F.2d 563, 564 n. 2 (1st Cir.1976); *Ransom v. Wainwright,* 553 F.2d 900, 901 (5th Cir. 1977) (per curiam). Therefore only irrational discrimination against them would violate the equal protection clause. Baer's treatment was not irrational. See *Bonacor-*

*sa v. Barry,* 664 F.2d 346 (2d Cir.1981) (per curiam).

His remaining arguments, which are based on the Constitution's prohibitions against bills of attainder and ex post facto laws, do not merit discussion. And as we have found that there was no violation of section 1983, we need not consider the defendants' immunity arguments, on which see our recent decision in *Reed v. Village of Shorewood, supra,* 704 F.2d at 951–54.

The judgment dismissing the complaint is AFFIRMED.

COFFEY, Circuit Judge, concurring.

I concur in the result reached by the majority but I am compelled to write separately as I do not believe the actions of the Wauwatosa City Council deprived Baer of any constitutionally cognizable property interest.

I agree with the majority's statement that "Baer was not really operating a licensed business." Under section 6.84.-020(B), Baer did not need a license to sell "rifles or shotguns used for hunting purposes, target-practice weapons, or any sporting-goods item." However, I cannot agree with the majority's bald assertion that "[b]y repealing section 6.84.020(B) and then refusing to issue Baer a license the defendants in effect closed down an unlicensed business, and that was a deprivation of property." I fail to understand how one gains a protected property interest in the operation of an unlicensed business. The majority attempts to justify its conclusion by drawing the following illogical analogy: "The state cannot take away your house without a hearing by passing a law that homeowners need a license for their homes and then denying you the license."

I contend that there is a fundamental difference between the occupation of a home and the privilege of carrying on a business of selling weapons. No one disputes that the City of Wauwatosa had the power to regulate the distribution of firearms in the interest of public health and safety. However, it is evident that the Common Council was without authority in the exercise of its governmental function to issue a license to Baer for a business enterprise specifically exempt from the requirement of such a license pursuant to section 6.84.020(B) of the Wauwatosa Code of Ordinances as codified. *Cf. Edelbeck v. Town of Theresa,* 57 Wis.2d 172, 177, 203 N.W.2d 694, 696 (1973). Thus Baer was not operating a "licensed business" due to the abovementioned exemption and he cannot conceivably have gained a property interest from a license or permit which was a nullity from the date of issuance. Therefore he does not have "a legitimate claim of entitlement," to the continued undisturbed operation of his enterprise. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

"The Supreme Court has made it clear that the [existence of a cognizable property interest] depends in large part upon the extent to which a person has been made secure in the enjoyment of the benefit as a matter of substantive state or federal law." *Beitzell v. Jeffrey,* 643 F.2d 870, 874 (1st Cir.1981). *See Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir.1983). Baer is unable to point to any case law and/or legal basis in federal or state law entitling him to a continued right to operate his previously licensed gun enterprise. Nor can Baer logically be heard to complain that the Common Council of the City of Wauwatosa, Wisconsin, now in the proper exercise of its discretion sees fit to require a license to carry on the previously unregulated sale of hunting and sporting firearms within their locality.

Baer argues that the license previously issued to him under section 6.84.020(A) somehow created a property interest in the continuation of his firearms business. It is clear, however, that Baer's license issued pursuant to section 6.84.020(A) was issued in error for section 6.84.020(B) of the Wauwatosa Code of Ordinances specifically exempted from the license requirement the sale of any "rifles or shotguns used for hunting purposes, target-practice weapons, or any sporting-goods item." I fail to un-

derstand how the majority can hold that an individual gains a property interest from the issuance of a license previously issued in error and therefore void from its inception.

After realizing that section 6.84.020(B) allowed Baer to operate his business without a license, the Common Council moved to adopt an ordinance requiring a license for the sale of any and all firearms in the City of Wauwatosa. The new ordinance, passed June 3, 1980, provided that "[n]o person shall engage in the business of selling or giving away any dangerous weapon or gun without obtaining a license." Section 6.84.-030 provided, *inter alia,* that "[u]pon the receipt of [a license] application, the common council *may* direct the city clerk to issue such license to the applicant." (emphasis added). The amended Code of Ordinances provides the Common Council with absolute authority and discretion in determining whether or not a license is to be issued to an applicant under the now adopted new Code. No citizen has a right to demand the issuance of a license to operate a firearms business enterprise within the confines of the City of Wauwatosa. The aspirations of Baer or any other citizen to obtain a firearms license are not constitutionally protected as a property interest under the Due Process Clause of the Fourteenth Amendment since they are, at best, merely a "unilateral expectation" of such receipt. *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. As the Ninth Circuit Court of Appeals recognized in *Erdelyi v. O'Brien,* 680 F.2d 61, 63 (9th Cir. 1982), where an issuing authority retains "broad discretion to grant or deny license applications in a closely regulated field, initial applicants do not have a property right in such licenses protected by the Fourteenth Amendment."

Furthermore, Baer cannot even legitimately claim that he has even a "unilateral expectation" of being able to continue his business because, as the majority notes, federal law prevents a convicted felon from selling firearms. Nor can he, as we pointed out earlier, rest his constitutional due process right on a license which was issued in error.