**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AUBREY E. HENRY,
<u>Plaintiff-Appellant,</u>

v.

JEFFERSON COUNTY PLANNING
COMMISSION; SCOTT COYLE,
Commission Member, in his
individual capacity; H. RICHARD
FLAHERTY, Commission Member, in
his individual capacity; PAUL
GRIGER, Commission Member, in
his individual capacity; SAM
DONLEY, Commission Member, in
his individual capacity; JIM KNODE,

Commission Member, in his                                   No. 99-2122
individual capacity; ERNIE BENNER,
Commission Member, in his
individual capacity; GILBERT PAGE
WRIGHT, Commission Member, in
his individual capacity; LYLE
CAMPBELL TABB, Commission
Member, in his individual capacity;
PAUL J. RACO, Director of Planning
and Zoning, in his individual and
official capacity; JEFFERSON COUNTY;
JEFFERSON COUNTY BOARDOF ZONING
APPEALS,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
W. Craig Broadwater, District Judge.
(CA-96-40-3)

Argued: April 7, 2000

Decided: June 9, 2000

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge,
and HAMILTON, Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Christian Yoder, Harpers Ferry, West Virginia, for
Appellant. Michael Douglas Lorensen, BOWLES, RICE,
MCDAVID, GRAFF & LOVE, P.L.L.C., Martinsburg, West Vir-
ginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Aubrey Henry (Henry) sued Jefferson County, West Virginia, the
Jefferson County Planning Commission, its individual members, and
the Jefferson County Board of Zoning Appeals (collectively the
County), in the United States District Court for the Northern District
of West Virginia, challenging the denial of his application for a condi-
tional use permit to build a townhouse development on property he
owned in Jefferson County. Henry asserted five claims, including a
takings claim, a substantive due process claim, two equal protection
claims, and a procedural due process claim. The district court dis-

missed all but the procedural due process claim on the ground of <u>Burford</u> abstention. With respect to the remaining claim, the district court granted the County's motion for summary judgment. For reasons that follow, we vacate the district court's dismissal of the takings claim, the substantive due process claim, and the two equal protection claims and remand those claims for further proceedings. However, we affirm the district court's grant of the County's motion for summary judgment with respect to the procedural due process claim.

I

On July 7, 1988, Jefferson County adopted the Jefferson County Zoning and Development Review Ordinance (the Zoning Ordinance) which, among other things, zoned certain areas of Jefferson County as a Rural-Agricultural District. The purpose of the Rural-Agricultural District "is to provide a location for low density single family residential development in conjunction with providing continued farming activities." Jefferson County, W. Va., Zoning and Development Review Ordinance § 5.13 (1990) (amending the original enactment of July 7, 1988). "A primary function of the low density residential development permitted within [the Rural-Agricultural District] is to preserve the rural character of the County and the agricultural community." <u>Id.</u> The Zoning Ordinance provides a list of sixteen permitted uses allowed in the Rural-Agricultural District, <u>see id.</u> § 5.7(a), and eight prohibited uses, <u>see id.</u> § 4.4. Uses that are not expressly permitted, but also not expressly prohibited, are allowed if the property owner can obtain a conditional use permit from the Jefferson County Planning Commission (the Commission) via the Development Review System contained in the Zoning Ordinance. <u>See id.</u> § 4.1.

The Development Review System consists of two to four stages: (1) application for a conditional use permit by the property owner to the Commission; (2) evaluation by the Commission's staff of the application, under the point system contained in Article 6 of the Zoning Ordinance, to determine whether the property at issue is better used for agricultural purposes as opposed to residential, commercial, or industrial development; (3) if the application receives a numerical score indicating that the property qualifies for possible residential, commercial, or industrial development, the Commission's staff holds

a compatibility assessment meeting (at which the public is allowed to comment) to determine the compatibility of the proposed development to the "existing areas adjacent to the site" and to the nature of the zoned district involved; and (4) if any compatibility issues remain unresolved after the compatibility assessment meeting, the Commission holds public hearings to discuss the unresolved issues. See id. art. 7, §§ 7.3-7.7. After completion of the requisite stages, the Commission formally votes to grant or deny the application for the permit. See id. § 7.6(g).

Pursuant to section 7.6 of the Zoning Ordinance, the compatibility of the proposed development at issue to the areas adjacent to the site and to the nature of the zoned district involved is determined by, among other things, the following criteria: (1) compatibility with federal, state, and local regulations; (2) similarity of the proposed development type (residential, commercial, or industrial) to existing development types; (3) the adequacy of roads and highways to accommodate the traffic to be generated by the development; (4) the present and future transportation patterns in the area; (5) the consistency with land-use plans and regulations of incorporated municipalities immediately adjacent to the proposed development; (6) any variance which is known to be required at the time the application is submitted; and (7) all items submitted with the application. See id. § 7.6(b).

Henry is the part-owner of 11.69 acres of real property, known as the Town Run Property (the Town Run Property), located on U.S. Highway 480 in Jefferson County, West Virginia. In 1994, Henry developed a plan to build seventy-six townhouses on 9.8 acres of the Town Run Property, with the remainder reserved for two single-family dwellings. Of relevance to this appeal, townhouses are not listed as a permitted or prohibited use in the Rural-Agricultural District. Because townhouse development is not a permitted use in the Rural-Agricultural District, Henry was required to seek a conditional use permit in order to proceed with his plan.

On January 25, 1994, Henry filed an application with the Commission requesting a conditional use permit for the proposed development of seventy-six townhouses on the Town Run Property (the Application or Henry's Application). The Application stated that the

4

development "in many ways conforms to parts of the comprehensive plan for Jefferson County." (J.A. 66). The Application further stated that the development would help to "eliminate sprawl by concentrating 76 units on 9.80 acres of land." Id. The Application indicated that parts of the Town Run Property were located adjacent to residential subdivisions.

As required in the Zoning Ordinance, the Commission's staff evaluated the Application under the point system contained in Article 6 of the Zoning Ordinance. As a result, the Commission's staff assigned the Application a total of 39.04 points, which qualified it for a compatibility assessment meeting. The Commission's staff held such a meeting on March 23, 1994, during which neighbors raised concerns about the proposed townhouse development. Opponents to the development expressed concerns about the development's incompatibility with the surrounding neighborhood and the possible impact on a nearby stream, wetlands, and an adjacent recreational park.

Taking the neighbors' concerns into consideration, the Commission's staff formulated an assessment of the Application outlining twenty-one conditions that, if complied with, would alleviate the neighbors' concerns. For example, the assessment required Henry to erect an eight-foot fence along one side of the Town Run Property, to provide lighting that would not glare onto the adjacent recreational park, and to provide an area for the pets of townhouse residents to defecate. Of the twenty-one conditions outlined, Henry only agreed to comply with five. The Commission's staff, therefore, listed the remaining sixteen as "unresolved" compatibility issues.

The Commission conducted public hearings on the unresolved compatibility issues on April 26, 1994, and May 24, 1994. At each hearing, opponents of the Application voiced concern about, among other things, the density of the townhouse development and its effects on traffic, the low-density nature of the Rural-Agricultural District, sewage, schools, and the use of the adjacent recreational park. At the close of the May 24, 1994 public hearing, the Commission voted to deny the Application. The Jefferson County Board of Zoning Appeals (the Board) affirmed the Commission's decision.

5

Henry appealed the Application's denial to the Circuit Court of Jefferson County, which affirmed. Henry then appealed to the West Virginia Supreme Court of Appeals, which, on November 21, 1997, reversed the Circuit Court's affirmance and remanded the case to the Board for more particular findings of fact. See Henry v. Jefferson County Planning Comm'n, 496 S.E.2d 239, 242 (W. Va. 1997). On remand, the Board entered a decision and order on March 19, 1998, setting forth detailed findings of fact and conclusions of law. Of note, the Board concluded that "the proposed townhouse project fails to be compatible with the housing developments in close proximity as a result of the vast disparity in the relative density. . . and the character of the housing."[1] (J.A. 84). Further, the Board concluded that "the proposed townhouse project is a high-density multi-family project and is not in conformity with the purpose of the Rural-Agricultural District." Id. Therefore, the Board denied the Application.

On April 17, 1998, Henry filed a petition with the Jefferson County Circuit Court seeking review of the Board's March 19, 1998 decision and order. On August 31, 1998, the Circuit Court affirmed the Board again. The West Virginia Supreme Court of Appeals subsequently denied Henry's petition for certiorari of this affirmance.

During the pendency of Henry's state court litigation, he also pursued the present federal court litigation. Specifically, on May 24, 1996, Henry filed this action.[2] On November 22, 1996, the district

_____

[1] The Board made a factual finding that Henry's proposed townhouse development "is located in close proximity to two other housing developments, Ledge Lowe Estates and Morgana, which consist of single family homes on lots of 2 acres or more." (J.A. 82).

[2] Of relevance to one of Henry's arguments on appeal, on September 19, 1996, over two years after the denial of Henry's Application for a conditional use permit, the Commission approved a conditional use permit for the Lowe project. The Lowe project proposed to build a conference center with 174 sleeping rooms and amenities on 70.52 acres. The Lowe project was located approximately 115 yards across U.S. Highway 480 from the Town Run Property but was zoned in the Residential-Growth District. "The Residential-Growth District is intended to provide for a variety of residential uses and densities which can be supported by central or public water and sewer and adequate roadways and services." Zoning and Development Review Ordinance § 5.4. Further, the Residential-Growth District "encourages commercial growth." Id.

court stayed its proceedings pending a decision by the West Virginia Supreme Court of Appeals in the state court litigation. After the West Virginia Supreme Court of Appeals issued its decision on November 21, 1997, Henry moved to lift the stay and for permission to file an amended complaint. The district court granted both motions.

Henry's amended complaint alleges the following five claims based upon the County's denial of the Application: (1) the County took his property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution as applied to the States via the Fourteenth Amendment; (2) the County violated his right to substantive due process under the Due Process Clause of the Fourteenth Amendment; (3) the Commission lacked a rational basis for its denial, and therefore, violated the Equal Protection Clause of the Fourteenth Amendment; (4) the Commission sought to prevent members of a suspect class from obtaining affordable housing, and therefore, violated the Equal Protection Clause; and (5) the County violated his right to procedural due process under the Due Process Clause. Given that the state court litigation was still pending at that time, the County moved to dismiss all five claims on the ground of Burford abstention.**3**

On September 24, 1998, based upon the Burford abstention doctrine, the district court dismissed, without prejudice, all of Henry's claims but the procedural due process claim. The County then moved for summary judgment on that claim, which the district court granted on July 21, 1999. Henry timely filed this appeal challenging the district court's disposition of all of his claims. **4**

---

**3** In Burford v. Sun Oil Co. , 319 U.S. 315 (1943), the Court held that although a federal district court sitting in equity possesses subject matter jurisdiction over a civil action, it may, in its sound discretion, refuse to exercise such jurisdiction in certain circumstances if abstention is necessary to show "proper regard for the rightful independence of state governments in carrying out their domestic policy." Id. at 317-18 (quotation marks omitted).

**4** After the district court's dismissal of Henry's takings claim, his substantive due process claim, and his two equal protection claims, on March 23, 1999, Henry filed a new complaint in federal district court reasserting these same claims. This new lawsuit challenges precisely the same conduct alleged in the dismissed counts but has been stayed pending the outcome of this appeal.

II

We first address Henry's challenge to the district court's dismissal, based upon the Burford abstention doctrine, of his takings claim, his substantive due process claim, and his two equal protection claims. As stated previously, under the Burford abstention doctrine, although a federal district court sitting in equity possesses subject matter jurisdiction over a civil action, it may, in its sound discretion, refuse to exercise such jurisdiction in certain circumstances if abstention is necessary to show "proper regard for the rightful independence of state governments in carrying out their domestic policy." 319 U.S. at 317-18 (quotation marks omitted). Significantly, a federal district court's discretionary authority to dismiss a civil action under the Burford abstention doctrine is limited to civil actions where the relief sought by the plaintiff is equitable or otherwise discretionary. See Quackenbush v. AllState Ins. Co., 517 U.S. 706, 728-31 (1996); Front Royal v. Town of Front Royal, 135 F.3d 275, 282 (4th Cir. 1998).**5** We do note, however, that "Burford might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law." Quackenbush, 517 U.S. at 730-31.

Because Henry has sought only monetary relief with respect to his takings claim, his substantive due process claim, and his two equal protection claims, the district court lacked the authority to dismiss those claims on the basis of the Burford abstention doctrine. Accordingly, we vacate the district court's September 24, 1998 order dismissing those claims and remand to the district court for further proceedings.**6**

_____

**5** Prior to the Supreme Court's decision in Quackenbush, we held in a case involving money damages, see Pomponio v. Fauquier County Bd. of Supervisors, 21 F.3d 1319 (4th Cir. 1994), that "the appropriate course of action in a Burford abstention case is to dismiss the suit." Id. at 1328. In dismissing Henry's takings claim, substantive due process claim, and two equal protection claims, the district court apparently relied upon this now overruled portion of Pomponio.

**6** We note that Henry has refiled these counts in a different case and that the district court has stayed its proceedings in that case pending the outcome of this appeal. On remand, the district court maintains the discretion to manage its docket and consolidate these claims if appropriate, or stay the present action pending final disposition of the state court proceedings.

III

Henry next argues that the district court erred in granting the County's motion for summary judgment on his procedural due process claim. We disagree.

In relevant part, the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. According to Henry, the Zoning Ordinance deprives him of his property rights with respect to the Town Run Property without due process of law, and therefore, violates the Due Process Clause. Specifically, Henry argues the Zoning Ordinance is so vague that it fails to provide a property owner with sufficient notice and warning as to what requirements must be met in order to obtain a conditional use permit, thereby affording the Commission unbridled and unlimited discretion in determining whether to grant or deny such a permit. As the precise source of this alleged unbridled and unlimited discretion, Henry identifies what he characterizes as the Zoning Ordinance's alleged lack of sufficiently specific criteria to determine the compatibility of the proposed development at issue with the areas adjacent to it and to the nature of the zoned district involved.

The doctrine of vagueness in the due process context is based upon the notion that the Due Process Clause requires an enactment to provide individuals with fair notice and warning as to what it requires. See Connally v. General Constr. Co., 269 U.S. 385, 391 (1926). At one time, "[t]he idea that excessive vagueness of an enactment violates due process [was] pretty much limited to criminal and other penal statutes and regulations." Baer v. City of Wauwatosa, 716 F.2d 1117, 1123 (7th Cir. 1983). That idea, however, has since been extended to licensing ordinances, see Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499-500 (1982); Baer, 716 F.2d at 1123-24, and zoning ordinances, see Cornerstone Bible Church v. City of Hastings, 948 F.2d 464, 473 (8th Cir. 1991); Williams v. City of Columbia, 906 F.2d 994, 998 (4th Cir. 1990). Whether a challenged statutory enactment is unconstitutionally vague is a legal question, which we review de novo. See Roach v. West Virginia Reg'l Jail & Correctional Facility Auth., 74 F.3d 46, 48 (4th

9

Cir. 1996); see also Mason v. Florida Bar, 208 F.3d 952, 955 (11th Cir. 2000).

In addressing Henry's vagueness challenge, we must determine whether the challenged portions of the Zoning Ordinance are sufficiently clear "to `give the person of ordinary intelligence a reasonable opportunity to know what is prohibited,' and to`provide explicit standards for those who apply them.'" General Media Communications, Inc. v. Cohen, 131 F.3d 273, 286 (2d Cir. 1997) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)); see Village of Hoffman Estates, 455 U.S. at 498 (same). In making this determination, we are mindful that we have previously opined that the amount of discretion afforded a zoning board in determining whether a particular land use is permissible is exceptionally high because zoning is an inherently discretionary system. See AT&T Wireless PCS, Inc. v. Winston-Salem Zoning Bd. of Adjustment, 172 F.3d 307, 316 (4th Cir. 1999); Gardner v. City of Baltimore Mayor & City Council, 969 F.2d 63, 67 (4th Cir. 1992) (recognizing that land-use decisions are a core function of local government and that subdivision control is an inherently discretionary system). We are also mindful that "[v]agueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis."[7] Maynard v. Cartwright, 486 U.S. 356, 361 (1988).

Contrary to Henry's argument, we conclude that the Zoning Ordinance contains sufficiently specific criteria to determine the compatibility of his proposed townhouse development with the areas adjacent to the Town Run Property and with the nature of the Rural-Agricultural District such that Henry is not without sufficient notice and warning as to the requirements he must meet in order to obtain the conditional use permit he seeks. Critically, the language and structure of the Zoning Ordinance leaves no doubt that the granting of a conditional use permit turns upon whether the proposed development at issue is compatible with the areas adjacent to the property at issue and to the nature of the zoned district involved. Logically, the word "compatible," as used in the Zoning Ordinance, has only one mean-

_____

[7] It is undisputed that the Zoning Ordinance does not threaten Henry's First Amendment rights.

10

ing: "capable of existing or living together in harmony." The Random House Dictionary of the English Language 417 (1998); see Webster's Third New International Dictionary 463 (1986) ("capable of existing together without discord or disharmony"). Henry has made no argument suggesting otherwise. Thus, under the Zoning Ordinance, Henry should not be granted a conditional use permit unless his proposed townhouse development is capable of existing in harmony with the areas adjacent to the Town Run Property and with the nature of the Rural-Agricultural District.

Furthermore, the language and structure of the Zoning Ordinance leaves a reasonable person no doubt as to the criteria that would be used in determining whether Henry's proposed townhouse development is in harmony with, i.e., compatible with, the areas adjacent to the Town Run Property and with the nature of the Rural-Agricultural District. Section 7.6 of the Zoning Ordinance expressly provides that, in the compatibility assessment meeting, Henry was required to "address the compatibility of his project to the existing areas adjacent to" the Town Run Property. Zoning and Development Review Ordinance § 7.6(a). Section 7.6 further specifies eight criteria, which "those who participate [in the compatibility assessment meeting] should address, but are not limited to." Id. § 7.6(b).

Section 7.6(b) of the Zoning Ordinance specifies that the compatibility of the proposed development is determined by the "[s]imilarity of proposed development type . . . to existing development types," the compatibility of the proposed development with federal, state, and local regulations, the adequacy of roads and highways to accommodate the proposed development, the present and future transportation patterns in the area, the consistency of the proposed development with land-use plans and regulations of adjacent municipalities, any variances required, and the relationship of the proposed development to the Zoning Ordinance's plan for the Rural-Agricultural District. Id.

We emphasize that this last specified criteria provides a clear benchmark for determining whether Henry's proposed development is compatible with the purpose and function of the Rural-Agricultural District. The Zoning Ordinance states that the purpose of the Rural-Agricultural District "is to provide a location for low density single-family residential development in conjunction with providing contin-

11

ued farming activities." Id. § 5.13 (emphasis added). Accordingly, "[a] primary function of the low density residential development permitted within a [Rural-Agricultural District] is to preserve the rural character of the County and the agricultural community." Id. (emphasis added). These statements give a reasonable person notice and warning that a proposed development such as Henry's, which he does not dispute is a high-density residential development, would not be in harmony with, and thus not compatible with, the nature of the Rural-Agricultural District.

We also know, pursuant to the Zoning Ordinance, that certain uses are permitted in the Rural-Agricultural District while others are prohibited. Obviously, the more similar a use in a proposed development is to a permitted use, the more compatible the use will be with the nature of the Rural-Agricultural District. Thus, where the Zoning Ordinance specifies as permitted uses single-family dwellings, home occupations, riding stables, child or elderly care facilities with four or less individuals, forestry, and small markets for the sale of farm produce; a reasonable person would have notice and warning that a high-density multi-family townhouse development is not similar to any permitted use and would not be in harmony with the nature of the Rural-Agricultural District.[8]

Finally, Henry argues that the language in section 7.6, allowing the Commission to consider other criteria than those specified, provides "absolutely no guidance or standard as to what other criteria may be considered." (Appellant's Br. at 40). We disagree. It is clear from the

---

[8] Henry points to the Commission's grant of a conditional use permit for the Lowe project, in September 1996, as evidence that the Zoning Ordinance does not provide sufficient standards for determining compatibility. We disagree. First, the Lowe project was located in the Residential-Growth District, which "is intended to provide for a variety of residential uses and densities," and "encourages commercial growth." Zoning and Development Review Ordinance § 5.4. Second, the Commission considered and approved the application for the Lowe project over two years after Henry's Application was denied. In sum, the grant of a conditional use permit to the Lowe project has no relevance to the issue of whether Henry had fair notice and warning of what requirements he had to meet to build a townhouse development on the Town Run Property in the Rural-Agricultural District in 1994.

12

language of the Zoning Ordinance that the eight specified criteria in section 7.6(b) are factors to be considered in determining whether Henry's proposed development is (1) in harmony with the areas adjacent to it, i.e., adjacent developments, adjacent roads and highways, and adjacent municipalities, or (2) in harmony with the nature of the Rural-Agricultural District, i.e., federal, state, and local laws governing the Rural-Agricultural District, any variance required by the Rural-Agricultural District, and the relationship of Henry's proposed development to the overall Zoning Ordinance. A reasonable person reading that language would have notice and warning that the Zoning Ordinance implies that any other criteria the Commission considers is similar to the specified criteria and addresses whether the proposed development is in harmony with areas adjacent to it and in harmony with the nature of the Rural-Agricultural District. See Hughey v. United States, 495 U.S. 411, 419 (1990) (noting that "the principle of ejusdem generis [provides] that a general statutory term should be understood in light of the specific terms that surround it").

In sum, the compatibility criteria specified and clearly implied in section 7.6 of the Zoning Ordinance, the express purpose and primary function of the Rural-Agricultural District, and the inherently objective nature of a compatibility determination is more than sufficient to provide Henry with sufficient notice and warning as to what requirements he must meet in order to obtain a conditional use permit. Thus, the Zoning Ordinance does not provide the Commission unbridled and unlimited discretion in determining whether to grant or deny Henry a conditional use permit as he contends. See Cornerstone, 948 F.2d at 473-74 ("The city council has established the zoning policy and objectives for each zone and has enumerated a comprehensive list of permitted uses. . . . The city's statement of objectives, along with available review procedures, sufficiently constrains the city planner's discretion."); Williams, 906 F.2d at 998 (holding that a zoning board's discretion was not unbridled and standardless where the criteria to be used in deciding whether to grant an exception to the ordinance were "contained in . . . the City's zoning ordinance and include `adverse impact of the proposed use on the aesthetic character of the environs'"). Because we discern no violation of the Due Process Clause in this case, we affirm the district court's grant of the County's

13

motion for summary judgment with respect to Henry's procedural due process claim.**9**

IV

In sum, we hold the district court erred in dismissing, under the Burford abstention doctrine, Henry's takings claim, his substantive due process claim, and his two equal protection claims. Accordingly, we vacate the district court's September 24, 1998 order dismissing those claims and remand for further proceedings. However, we reject Henry's procedural due process challenge to the Zoning Ordinance premised upon the doctrine of vagueness, and therefore, affirm the district court's grant of the County's motion for summary judgment.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

_____

**9** We note that Henry's procedural due process claim does not directly attack the Commission's determination that his proposed townhouse development is incompatible with the existing uses of property adjacent to the Town Run Property and the purpose and function of the Rural-Agricultural District. Rather, such an attack is the subject of his substantive due process claim, which we remand for further proceedings without addressing its merit.

14